WILLIAM CHRISTY et al.

v.

VICTORIA J. MARMON et al.

163     225
h201 ¹387

*Filed at Springfield November 10, 1896.*

1. HUSBAND AND WIFE—*construction of ante-nuptial contract as affecting dower and right of inheritance.* A provision in an ante-nuptial contract that a wife shall, after the husband's death, "have full control and use" of certain described property during life and widowhood, and that she "is to receive as dower from the estate" of the husband "the sum of $500 annually," bars the dower of the wife in the husband's estate, but does not bar her inheritance as heir under section 1 of the Statute of Descent, or her right of homestead, no purpose to so bar her being expressed.

2. SAME—*ante-nuptial contract construed as to what property an annuity is chargeable upon.* An annuity provided under an ante-nuptial contract to be received by a wife after the husband's death "as dower from the estate" of such husband, is chargeable upon the whole estate, real and personal, and not exclusively upon the portion inherited by heirs other than the wife.

3. DOWER—*widow whose dower is barred cannot appropriate the rents.* An ante-nuptial agreement, in the nature of an equitable jointure, which bars the wife's dower, will preclude her from appropriating rents of real estate as damages for delay in assigning dower.

4. APPEALS AND ERRORS—*one may join his co-defendant's name in writ of error.* A party may join his co-defendant's name as plaintiff in a writ of error without his consent.

WRIT OF ERROR to the Circuit Court of Greene county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

This is a bill, as originally filed and as finally amended, for assignment of homestead, to enforce ante-nuptial agreement, and for partition. It was filed by Victoria J. Marmon, widow of William P. Marmon, deceased, and with her were joined as co-complainants certain persons, who were nephews and nieces of the deceased. Two of the defendants, May L. Christy, a grand-niece, and Frank Soper, a great-grand-nephew, of the deceased, were infants; and for these a guardian *ad litem* was ap-

pointed, who answered. Default was entered against all the adult defendants, except certain parties, whose interests are not here in controversy. The cause was referred to a master in chancery to take proofs and report his conclusions thereon. The solicitor for the widow, Victoria J. Marmon, defendant in error herein, and the guardian *ad litem* of the minor defendants, who, with others, are plaintiffs in error, appeared before the master. The master made a report, to which the defendants excepted. The court overruled the exceptions, approved the report, and on March 8, 1894, entered a decree for partition and assignment of homestead and appointing commissioners, and making other findings which will be hereafter referred to. The commissioners made their report on March 13, 1894, and on the same day a decree was entered approving said report, ordering a sale of a part of the premises, and making other findings hereafter to be noticed. Exceptions to this decree were filed by the guardian *ad litem.* On September 21, 1894, the master made report of sale, to which the guardian *ad litem* filed exceptions; and a final decree was entered on the same day overruling such exceptions, confirming the sale and report, directing a deed to be made to the purchaser, appointing a trustee for the fund, or a part thereof, realized by the sale, and making other findings and orders, all of which were excepted to by the guardian *ad litem.* The present writ of error is sued out for the purpose of reviewing such final decree and the various proceedings and orders leading up to and preceding its entry.

The following facts appear from the pleadings, proofs, reports, orders and decrees in the cause: On September 24, 1884, at Jacksonville, Illinois, the said William P. Marmon, since deceased, and the defendant in error, Victoria Josephine Marmon, (then Victoria Josephine Richards), in anticipation of their marriage, entered into the following stipulation or agreement:

"This agreement, made and entered into this, the 24th day of September, A. D. 1884, between William P. Marmon, of Carrollton, Greene county, in the State of Illinois, party of the first part, and V. Josephine Richards, of Newark, Ohio, party of the second part:

"*Witnesseth:* That said party of the first part, in consideration of the agreement hereinafter set out, covenants and agrees to and with the said party of the second part, to marry her, the said V. Josephine Richards, on the 24th day of September, 1884, and the said parties to this agreement agree to the following stipulation: The said party of the first part reserves to himself as his own separate property, to-wit, lot numbered 41, in Sharon, Morrow & Calvin's addition to the town of Carrollton, Greene county, Illinois. And it is further agreed to, by and between the said parties, that after the death of the said William P. Marmon the said V. Josephine Richards shall have full control and use of the property described above, during her natural life and widowhood. Also, the said party of the second part is to receive as dower from the estate of the said William P. Marmon the sum of five hundred dollars annually, each and every year, from said estate, during her natural life and remaining my widow.

"Witness our hands and seals this 24th day of September, A. D. 1884.

WILLIAM P. MARMON,     [Seal.]
V. JOSEPHINE RICHARDS.     [Seal.]"

On the same day, September 24, 1884, William P. Marmon and Victoria J. Richards were married, and lived together as husband and wife until January 12, 1893. On January 12, 1893, William P. Marmon died intestate, leaving no child, nor children, nor descendant of a child, but leaving, as his only heirs-at-law, his widow, the said Victoria J. Marmon, defendant in error, and certain nephews and nieces and grand-nieces, and a grand-nephew and great-grand-nephew, children and descendants of his two deceased brothers, James Marmon and John H. Marmon, and who, with said infants above named, and one William Christy, husband of one of said nieces, and others, are plaintiffs in error herein. At the time of his death, William P. Marmon owned personal property, and was the owner seized in fee of the above described lot 41 and

of other lots and lands. The deceased and his said wife occupied said lot 41 and the house thereon, as a homestead, and were so occupying such premises as a homestead when he died. The defendant in error, Victoria J. Marmon, was appointed administratrix of her husband's estate by the probate court of Greene county, and makes the following statement in her evidence before the master: "There are no outstanding debts against the estate; I have an abundance of personal property as his administratrix to settle all claims against his estate."

By the decree of March 8, 1894, the circuit court found that said marriage contract was valid and binding in law; that, by the death of William P. Marmon, Victoria J. Marmon, Sarah E. Altum, Jennie Virginia Marmon, John L. Marmon, George Marmon, Charles Marmon, William B. Marmon, Joseph P. Marmon, Mary Marmon, Sallie Crawford, John Christy, Mary L. Christy and Fannie Soper became seized in fee simple, as tenants in common of the premises described in the bill, subject, however, to provisions made in said marriage contract; that Victoria J. Marmon became seized in fee simple of an equal undivided half part of said premises, and in addition thereto is entitled to the sum of $500.00 to be paid her each and every year, so long as she shall live and remain the widow of the said William P. Marmon, said annual sum to be derived from the other half of said real estate, and to be in lieu of dower, as provided in said marriage contract; and, in addition, the said Victoria J. Marmon is entitled to the use of lot 41, as a homestead; that the respective interests of the above named heirs in the remaining half of said premises are subject to the homestead and the said annuity of $500.00 of the said Victoria J. Marmon. Said decree ordered and adjudged that she recover her homestead in said premises, and recover her annuity of $500.00 in lieu of her dower.

The commissioners set off and assigned to the said Victoria J. Marmon, as her homestead in said premises,

lot numbered 41, etc., and appraised the value of said lot, subject to said homestead, at $75.00; and further set off and assigned to her as her half of all the remainder of said premises, in fee simple, the east one-third of lot numbered 24, in Carrollton, except the third story of the building situate thereon, and appraised its value at $6275.00; and reported that the several pieces, tracts and parcels of said premises remaining, from which above are set off and assigned, are not susceptible of division or partition without manifest prejudice to the parties in interest; the remaining pieces are appraised severally, the appraised value aggregating $6200.00.

The decree of March 13, 1894, declared lot 41 to be the homestead of the widow, and also declared the east one-third of lot 24, except as above stated, to be set off to her as her half of the remainder of said premises, as heir of her husband; and adjudged, that the remainder of said premises be sold at public auction to the highest bidder by the master for one-third cash, and the balance payable in one and two years.

In his report of sale, the master reported that he sold all the premises directed to be sold to the defendant in error, Victoria J. Marmon, for $5027.00. By the final decree of September 21, 1894, it was ordered and decreed, "that the proceeds of said sale by said master in chancery coming into his hands after the costs of said sale are fully paid, shall be placed, as the same are collected, in the hands of George W. Davis, who is hereby appointed trustee of said fund, and who is hereby ordered and directed to give bond, to be approved by said master in chancery, in double the amount of said fund so placed in his hands. The said trustee is hereby ordered and directed to loan said fund on the best terms possible, and on good security, and the interest or proceeds of said fund so loaned, after retaining his reasonable commissions as said trustee, to be fixed by the court, he is to apply in payment of said annuity of $500.00 due the said

Victoria J. Marmon each and every year during her widowhood as aforesaid; and that said annuity be paid by said trustee or his successors annually;" and it was further ordered, that Victoria J. Marmon retain the rents and profits collected by her in payment and in satisfaction of her annuity, so accruing up to the date of the decree, the said annuity to be paid annually at the end of each and every year after the date of said decree and beginning with said date.

JAMES R. WARD, and FRANK A. WHITESIDE, for plaintiffs in error.

H. H. MONTGOMERY, and J. M. RIGGS, for defendants in error.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

It is contended by plaintiffs in error, that the widow is cut off by the ante-nuptial agreement from claiming any interest in the estate of her husband as his heir. The third clause of section 1 of the act in regard to the descent of property provides that, "when there is a widow or surviving husband, and no child or children or descendants of a child or children of the intestate, then (after the payment of all just debts) one-half of the real estate and the whole of the personal estate shall descend to such widow or surviving husband as an absolute estate forever, and the other half of the real estate shall descend as in other cases, where there is no child or children or descendants of a child or children." (1 Starr & Cur. Stat. p. 879). If there had been no ante-nuptial agreement in this case, the defendant in error would not only have taken all the personal property, left after the payment of the just debts, and one-half of the real property, as heir of her deceased husband, but she would also have been entitled to dower in the other half of the real property inherited by the children and other descendants

of the intestate's deceased brothers. The ante-nuptial agreement here undoubtedly bars the widow of her dower, but it does not bar her of her inheritance as an heir-at-law of the intestate. What she takes as heir of her husband is entirely separate and distinct from her right of dower. There is no language in the agreement, which recites that the provisions therein made are to be in satisfaction of her inheritance as heir. The annuity of $500.00 she is to receive as dower, and not in lieu of her share in the estate as heir of her husband. Where a party, in anticipation of marriage, conveyed to his intended wife certain real estate, which was declared to be a jointure in full recompense and satisfaction for dower, or any claim of dower on her part, the latter joining in the execution of the same to evince her assent to the provisions thereof, and after the marriage the husband died intestate, leaving no child or children, or descendants of any child; it was held, that such an ante-nuptial contract did not bar the widow from claiming as heir of her husband, and that, under the statute, she took as such heir one-half of the real and all the personal estate of her deceased husband, left after the payment of his debts. (*Sutherland* v. *Sutherland*, 69 Ill. 481).

So, here, notwithstanding the execution of the ante-nuptial agreement of September 24, 1884, the defendant in error, as heir of her husband, is entitled to one-half of the real estate, and the whole of the personal estate left after the payment of all the debts. That agreement does not bar her from recovering as such heir one-half of the realty, and all the personalty remaining after the debts are paid. In so holding, the decree of the court below was correct.

But we think, that the decree was erroneous in charging the payment of the annuity of $500.00 exclusively upon the half of the land inherited by the collateral heirs of the deceased intestate, or upon the proceeds of the sale of their half of the land, and relieving that part

of the estate, inherited by the widow as heir of her hus-
band, from the payment of any portion of such annuity.
The contract reads as follows: "The said party of the
second part is to receive as dower from the estate of the
said William P. Marmon the sum of five hundred dollars
annually, each and every year from said estate, during
her natural life and remaining my widow." The annuity
is to be paid "from the estate," that is to say, from the
whole estate, and not from one-half of it, or from one-half
of so much of it as is real property. The words, "from the
estate," or "from said estate," are repeated as if to give
emphasis to the idea, that the annuity was to be a charge
upon the whole estate. The whole estate consisted, not
only of the half of the realty inherited by those heirs of
William P. Marmon who were his nephews and nieces,
etc., but also of the half of the realty and the portion
of the personal property inherited by his wife, who was
also an heir.

It is true that, under the contract, the widow is to re-
ceive the annuity from the estate "as dower." But, if the
annuity is to be received as dower, or for dower, or in the
place and stead of dower, it does not therefore follow,
that such annuity must be raised entirely and exclusively
from that part of the estate, to which dower would attach
if there were no ante-nuptial agreement, particularly
when the provision is, that the annuity is to be received
from the whole estate. A bond, conditioned for the
payment of money after the obligor's death, made to a
woman in contemplation of the obligor's marrying her,
and intended for her benefit if she should survive, is not
released by their marriage. (*Milburn* v. *Ewart*, 5 T. R.
381; D. & E. 196). A stipulation in a marriage contract,
to the effect that, in case the wife should survive the
husband, she should receive from the estate of the hus-
band a certain sum, is valid; and such an instrument
creates a legal liability in favor of the wife, and she may
bring suit on the same after the decease of her husband

against his representatives. (*Vogel* v. *Vogel's Admr.* 22 Mo. 161). By the terms of the present contract, the deceased was to marry defendant in error in consideration that she should receive the annuity of $500.00 from his estate as her dower; and herein the present case differs from *Jordan* v. *Clark*, 81 Ill. 465, where "the money was not given in consideration" for the marriage.

There is no proof in the record to show how much personal property was left after the payment of all the debts. The court should have directed proof to be taken upon this subject. The amount of the personal property, left after payment of debts and belonging to defendant in error as heir, and the one-half of the realty inherited by her as heir, are chargeable with the payment of their proportion of the annuity, as between the widow and the other heirs.

Proof also should have been taken of the amount of rents and profits collected by the widow up to the date of the decree. These also should have been added to the estate chargeable with the payment of the annuity. The widow was not entitled to appropriate such rents and profits as damages for delay in the assignment of her dower, and in satisfaction thereof prior to the date of the decree, because the ante-nuptial agreement was in the nature of an equitable jointure, and barred her right of dower in the real estate of the deceased intestate, and also her widow's award, though it was no bar to her estate of homestead. (*Barth* v. *Lines*, 118 Ill. 374; *Spencer* v. *Boardman*, id. 553; *McGee* v. *McGee*, 91 id. 548; *McMahill* v. *McMahill*, 105 id. 596).

One of the defendants below, whose name is joined as one of the plaintiffs in error, moves to dismiss the writ of error upon the ground that his name has been so used without his authority. The joining of his name as one of the plaintiffs in error was allowable under the statute and under the decisions of this court. (Practice act, chap. 110, sec. 70; 2 Starr & Cur. Stat. p. 1834; *McIntyre*

v. *Sholty*, 139 Ill. 171; *Moore* v. *Capps*, 4 Gilm. 315). The motion is accordingly overruled.

For the reasons above stated the decree of the circuit court is reversed and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.            *Reversed and remanded.*