Eleanor K. Genung and Eleanor K. Genung, as Administrator of the Estate of Gilbert M. Genung, Deceased, Plaintiff-Appellant v. Phyllis Hagemann, Richard W. Gilson, William Gilson and Richard W. Gilson, as Administrator of the Estate of Irene Gilson, Deceased, Defendants-Appellees.

Gen. No. 68–106.

Second District.

December 18, 1968.

Berry & O'Conor, of Streator, for appellant.

C. Robert Ohse and Dallas C. Ingemunson, of York-ville, and Schreiber, Mack & Pieper, of Chicago, for ap-pellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Plaintiff appeals from a declaratory judgment involving the interpretation of an antenuptial agreement. The trial court, ruling on a motion to strike the complaint, entered its decree and judgment on the merits, interpreting the contract, and holding that the plaintiff was entitled to a life estate in the real estate owned by the decedent and to the proceeds of an insurance policy, but was barred by the antenuptial agreement from inheriting an intestate's share of decedent's estate.

The ruling by the trial court admitted the pleaded facts that the decedent and his wife, the plaintiff, had entered into an antenuptial agreement before their marriage and that each had been married before and each had children by the previous marriage. It was also admitted that the decedent died intestate and that he did not make the plaintiff the beneficiary of the insurance policy.

The Agreement provided:

### "ANTENUPTIAL CONTRACT

"This antenuptial contract entered into this 14th day of December, A. D., 1960, between Gilbert M. Genung, hereinafter for convenience referred to as husband, and Eleanor K. Kauth, hereinafter for convenience referred to as wife, witnesseth:

"1. Husband and wife intend to marry each other soon, and it is agreed that after such marriage, all the properties of any name or nature, real, personal or mixed, wherever they may be found, belonging to the husband before marriage shall be and remain forever, his personal estate, and that this shall in-

clude all interest, rents and profits which may in time accrue or result in any manner from increase in value, or be collected for the use of the same in any way.

"2. All properties of any name or nature, real, personal or mixed, wherever the same may be found which belong to wife before marriage shall be and remain forever her personal estate, and this shall include all interest, rents and profits which may in time accrue or result in any manner from increase in value, or be collected for the use of the same in any way.

"3. Each party agrees to sign with the other all title papers, deeds or other papers, necessary to transfer property when sold to a purchaser, as such title papers are usually executed by a man and wife in the State of Illinois.

"4. Husband agrees to, from his own personal estate, assume necessary expense of support and maintenance of wife.

"5. Nothing herein shall be construed to be a bar to either party to this agreement, giving any property of which they may be possessed to the other party by Will or otherwise. Each party to this agreement shall control their personal estate, as described herein, and do with the properties thereof whatsoever they wish and will, by his or her orders or directions, or by Will, the same as either party could or would do if no marriage relation existed between them, except that the husband agrees that he will devise to the wife, a life interest for and during the period of her natural life only, in his twenty-six acre farm located approximately three (3) miles West of Yorkville on North River Road.

"6. It is also agreed that the husband has a policy of insurance in the amount of Two Thousand

($2,000.00) Dollars in the Modern Woodman of America, policy # E 245 202. He will make the wife beneficiary of this policy of insurance and the proceeds of said insurance are to be used, first for the payment of the husband's burial expenses, and any balance is to go to the wife as beneficiary of the policy as her own property. The husband also has a policy of insurance in the amount of Six Thousand ($6,000.00) Dollars, which was taken out through the Public Service Company when he was employed by that company. The husband will make the wife beneficiary of this Six Thousand ($6,000.00) Dollar insurance policy with Group 2025—Certificate E 61, Policy # _____ and the proceeds of said policy shall belong to the wife as her separate property in the event of the death of the husband. All other insurance and other property of the husband, may be left by him to his own children.

"IN WITNESS WHEREOF the parties hereto have set their hands and seals the day and year first above written.

GILBERT M. GENUNG (s) (SEAL)
HUSBAND

ELEANOR KAUTH (s) (SEAL)
WIFE"

It was further admitted that the decedent married the plaintiff some days after the execution of the agreement and that they thereafter lived together as husband and wife until the death of decedent on August 16th, 1964; and that a certain twenty-six acre farm was inventoried in the decedent's estate, being the same farm which he had owned at the time of the marriage.

Plaintiff's position is that the right of the wife to inherit from her husband will not be taken away by an antenuptial contract unless the intention to do so is

413

clearly apparent, and that it is not clearly apparent from the agreement. She also contends that the beneficiaries of the insurance policy hold the proceeds in trust for her rather than it being an obligation of the estate.

 Rules governing construction and interpretation of contracts generally apply to the construction of an antenuptial agreement, and the contract should be considered in its entirety to ascertain its general scope or purpose in order to determine the real intention of the parties. Guhl v. Guhl, 376 Ill 100, 109-110, 33 NE2d 185 (1941); VanCura v. Drangelis, 43 Ill App2d 205, 210, 193 NE2d 201 (1963). The marital rights of a husband and a wife will not be taken away by an antenuptial agreement unless the intention to do is clearly apparent. Baughman v. Baughman, 283 Ill 55, 68, 119 NE 49 (1918); Seuss v. Schukat, 358 Ill 27, 35, 192 NE 668 (1934). Inheritance is not barred where there is no language in the agreement which recites that the provisions therein are to be in satisfaction of inheritance as an heir. Christy v. Marmon, 163 Ill 225, 231, 45 NE 150 (1896). A right in the estate of a spouse can be relinquished without the use of precise words to that effect, providing the contract contains language sufficiently comprehensive to show that it was the intention of the parties to release such a right in an antenuptial agreement. Collins v. Phillips, 259 Ill 405, 411, 412, 102 NE 796 (1913); Guhl v. Guhl, supra, at page 110.

The agreement before us contains no provision expressly releasing the marital rights or rights of inheritance of Eleanor K. Genung, the widow. The defendant claims, however, that certain language in the agreement clearly shows an intention to release the statutory right to inherit from the other spouse. Particular reference is made to the provisions of paragraph 1 that the property belonging to the husband before the marriage "shall be and remain forever his personal estate"; that either may do with the properties thereof "whatsoever they

414

wish and will, by his or her orders or directions, or by Will, the same as either party could or would do if no marriage relation existed between them," in paragraph 5 of the agreement; and finally the language in paragraph 6 of the agreement, "all other insurance and other property of the husband, may be left by him to his own children."

The plaintiff argues that the agreement contains no provision that is broad enough to be interpreted as an implied release or waiver of the marital rights or rights of inheritance of the widow. She argues that the express provisions of paragraph 5 of the agreement that "nothing herein shall be construed to be a bar to either party to this agreement, giving any property of which they may be possessed to the other party by Will or otherwise" is sufficiently broad to include the case of expressly refraining from making a will and thereby giving property according to the Statute of Descent. Plaintiff further argues that the fact that the agreement purports to operate only on the property of the parties owned or acquired prior to the marriage and not on all of the property owned at the time of death further indicates that a broad waiver of the right of inheritance was not intended.

Since no evidence was taken we are, in effect, limited to the language used in the agreement without attendant circumstances which might have aided in construing the intention of the parties to the agreement. However, from the agreement it is clear that, in paragraphs 1 and 2, the parties were contracting to segregate their respective properties owned at the time of the intended marriage and to free them "forever" from the legal rights which would otherwise belong to the other spouse as an incident of the marriage relationship. This is further made clear by the second sentence of paragraph 5 of the agreement providing that each party "shall control" their separate properties as if no marriage rela-

tionship existed; and by the last sentence of the agreement that "other property" of the husband "may be left by him to his own children."

In Luttrell v. Boggs, 168 Ill 361, 362, 48 NE 171 (1897), a separation agreement expressly released all interest each party had in the property possessed by the other at the time of the marriage. Although there was no express waiver of the right of dower or the right to take as an heir, the court held such rights were effectively released by the agreement. While it might be argued that there is a different intendment in the execution of a separation agreement than there is in the execution of an antenuptial agreement, we perceive that fact to be but one of the attendant circumstances to an interpretation of an agreement, and the essential rules of construction remain the same.

In Wetsel v. Firebaugh, 258 Ill 404, 407, 101 NE 602 (1913), an antenuptial agreement provided that "neither party shall, by reason of said marriage, have any right, title or interest in the property of the other *during their joint lives or thereafter*" (emphasis added). The court held that the language used in the agreement was broad enough to exclude *any* right or interest of the spouse in the property.

We cannot find a meaningful distinction between the word *"forever"* found in paragraphs 1 and 2 of the agreement before us, and *"or thereafter"* as used in the agreement before the court in Wetsel. "Forever" is defined as "throughout eternity; endlessly; for always . . . ." Webster's New Twentieth Century Dictionary, 2nd Ed, Unabridged.

In Collins v. Phillips (supra), the court (at page 411) considered language that provided that neither party would claim any interest in the other's property either during "lifetime or upon her death," and the further language "just as though such marriage should not take place," as releasing the right to inherit although the

agreement did not specifically bar such right, citing Wetsel v. Firebaugh, supra.

■ We, therefore, find that the agreement in this case contains provisions broad enough to be interpreted as an implied release or waiver of the marital rights of the widow, Eleanor K. Genung, including the right to inherit.

■ Plaintiff also claims, however, that the widow is entitled to take by intestacy under the express terms of paragraph 5 of the agreement. This provides that "nothing herein shall be construed to be a bar to either party to this agreement giving any property of which they may be possessed to the other party *by will or otherwise*" (emphasis added). Defendants argue that the latter clause is intended to mean that an affirmative act of either making a will or inter vivos gift is required, and the trial court so found.

We believe that the trial court was correct in its interpretation. The first sentence of paragraph 5 must be read together with the sentence which follows it and construed with the entire agreement. The statement that either party may give property to the other is followed by the statement that each shall "control" their personal estate and do with it *"whatsoever they wish and will, by his or her orders or directions, or by will . . . ."* (Emphasis added.) We believe this indicates an intention that an affirmative act of ordering, or directing, or making a will, is intended if the other is to take property over which he or she has by the agreement given up all rights. We do not construe the agreement to mean that a failure to act, such as intestacy, is the "giving" or the "doing with the properties" specified in the agreement.

We, therefore, hold that the plaintiff is barred by the antenuptial agreement from taking under the Statute of Descent. The life estate and the insurance proceeds specified in the agreement are in full satisfaction of all

417

of plaintiff's rights in the estate of her husband pursuant to the agreement.

 Finally, we hold that the trial court properly ordered that the estate pay the plaintiff the proceeds of the Two Thousand ($2,000) Dollar insurance policy issued by the Modern Woodman of America. This obligation to change the beneficiary on the policy was created in and by the antenuptial agreement. The failure of decedent to perform the obligation was a breach of his contract for which his estate is liable. It is not an obligation of the beneficiaries whose interests vested at the death of the insured under the separate insurance contract, absent, as here, any evidence that the beneficiary took with knowledge of a prior equity of the wife. 41 Am Jur 2nd, Husband and Wife, § 308, page 252.

We, therefore, affirm the judgment of the trial court.

Affirmed.

ABRAHAMSON and DAVIS, JJ., concur.