*In re* ESTATE OF LILLIAN KLINKER, Deceased.—(WILLIAM S. RICHARDSON, Adm'r of the Estate of Lillian Klinker, Petitioner-Appellee, *v.* RALPH KLINKER *et al.*, Defendants—(RALPH KLINKER, Defendant-Appellant).)

Fifth District   No. 79-100

Opinion filed December 28, 1979.

Theodore Van Winkle, of McLeansboro, for appellant.

Nancy K. Hall, of Bonan & Bonan, Chartered, of McLeansboro, for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

The present matter comes before us from a decision in favor of the petitioner below, William S. Richardson, administrator of the estate of Lillian M. Klinker, in the circuit court of Hamilton County. Petitioner sought the court's permission to convey certain real property located in Franklin County in execution of an option contract entered into by the decedent. Defendant, E. Ralph Klinker, as surviving spouse, answered contending that certain interests in the above-mentioned tracts, acquired

by the decedent not long before her death, must properly pass to him as per an antenuptial agreement entered into by the decedent and the defendant.

After interpreting the antenuptial agreement, and examining both the intentions of the parties and the surrounding circumstances, the trial court ruled that the land in question was solely the property of the decedent at the time of her death. It would thus pass to her heirs, to the exclusion of E. Ralph Klinker. Defendant appeals, arguing that the trial court improperly construed the antenuptial agreement. We affirm.

The decedent, Lillian Klinker, acquired title to the two tracts of land in the present controversy during her marriage to John Richardson. They held the property as tenants in common until he died intestate, at which time she succeeded to one-half of his interest therein, giving her, in total, a three-quarters undivided interest in the two parcels. Various collateral heirs of John Richardson took the remaining one-quarter interest. The disputed real estate situated in Franklin County is known as:

"TRACT I: Ten acres off of the North side of the South 20 acres of the Northeast Quarter of the Northwest Quarter (NE NW) of Section Twenty-three (23), Township Five (5) South, Range Four (4) East of the 3rd P.M., Franklin County, Illinois, containing 10 acres, more or less;

TRACT II: The Northeast Quarter of the Northeast Quarter of the Northwest Quarter (NE NE NW) of Section Twenty-three (23), Township Five (5) South, Range Four (4) East of the 3rd P.M., Franklin County, Illinois, containing 10 acres, more or less."

In 1961 the decedent, prior to her remarriage, entered into an antenuptial agreement with the defendant regarding the control and ownership of certain real property then owned by her, including the above-described tracts. The contract was drafted by Theodore Van Winkle, attorney for the defendant in the present litigation, and there is no dispute as to its validity. It operated to waive dower, homestead, and inheritance rights which would normally devolve from the marriage in respect to the enumerated real estate. In addition, a provision was included concerning real property acquired after the marriage was entered into (paragraph 5) which reads as follows:

"That if the parties acquire any real property subsequent to the date of their marriage, they shall own and operate such property jointly and such property shall be exempt from the provisions of this agreement heretofore enumerated."

Paragraph 1 of the agreement listed by legal description five parcels of land then owned by the late Lillian Klinker and provided that "* * * each of the parties hereto shall operate and manage their own real property independently of the other, the same as though they were not

married, * * *." The two tracts in dispute were named but were incompletely described, since it was not noted that the deceased held less than an entire interest in them. They were referred to as if wholly owned by the decedent prior to the marriage of the Klinkers.

Sixteen years later, with but one exception, the heirs of John Richardson conveyed via quitclaim deeds their one-quarter undivided interest to Lillian Klinker alone. These conveyances occurred between August 1977 and March 1978. During that time the decedent was a member of the Ewing-Northern Coal Association which organization entered into an option contract in May 1976 for the sale of coal owned by its members (including that underlying one of the above-mentioned parcels) to the Tennessee Valley Authority. The option was exercised in June 1977. Lillian Klinker died intestate on March 29, 1978.

The administrator of Lillian Klinker's estate filed a petition in probate court to complete the contract to convey the coal rights beneath one of the tracts in question on September 25, 1978, which petition began the present litigation. In addition, he petitioned the court on November 20, 1978, in order to effect a sale of both surface tracts concerned. The defendant answered both petitions contending that the antenuptial agreement dictated that the interests conveyed by the quitclaim deeds constituted real property acquired during the Klinkers' marriage. They would hence be subject to joint tenancy. As surviving spouse such interests would pass into the hands of the defendant. If not, the property interests would remain in the estate of Lillian Klinker descending to her heirs.

■■■ The same rules which govern the interpretation and construction of contracts generally are to be applied when construing an antenuptial agreement. The instrument should be considered in its entirety, together with its general scope and purpose to determine and give effect to the real intention of the parties. (*Guhl v. Guhl* (1941), 376 Ill. 100, 33 N.E.2d 185; *Collins v. Phillips* (1913), 259 Ill. 405, 102 N.E. 796; *Genung v. Hagemann* (1968), 103 Ill. App. 2d 409, 242 N.E.2d 790.) In determining the meaning of a contract, the fundamental question is always the intent of the parties. (*Mendelson v. Flaxman* (1975), 32 Ill. App. 3d 644, 336 N.E.2d 316; *Stevens v. Fanning* (1965), 59 Ill. App. 2d 285, 207 N.E.2d 136.) In ascertaining the intention of the parties, the conditions and circumstances surrounding the parties at the time the agreement was made, so far as they are shown by the record, are proper matters to be considered. (*Collins v. Phillips; Van Cura v. Drangelis* (1963), 43 Ill. App. 2d 205, 193 N.E.2d 201.) In regard to the pertinent considerations of interpretation the appellate court has said:

"In the construction of contracts for the purpose of ascertaining the intention of the parties, the court will endeavor, by extrinsic

evidence of such facts as the parties had in view, to place itself as nearly as possible in their position, so it may understand the language used in the sense intended by them. In seeking to ascertain the intention, regard will also be had to the practical construction, if any, which the parties, by their acts, have given the contract. So also, the acts of the parties themselves, indicative of their construction placed upon it, may be resorted to for the purpose of determining the true meaning of the written agreement and in this regard it makes no difference whether such acts are contemporaneous or subsequent. Moreover, where the contract is, in fact, understood by one of the parties in a certain sense and the other party knows that he so understands it, then the understanding is to be taken in that sense, provided this can be done without making a new contract between the parties. *Smurr v. Kamen*, 301 Ill. 179; *Weger v. Robinson Nash Motor Co.*, 340 Ill. 81." *Keefer Coal Co. v. United Electric Coal Companies* (1937), 291 Ill. App. 477, 492, 10 N.E.2d 210; see also *Mendelson v. Flaxman; Knorr v. White Brothers Trucking Co.* (1967), 79 Ill. App. 2d 471, 224 N.E.2d 299.

■ Likewise, in the instant case, the initial misdescription of the real property listed in paragraph 1 of the antenuptial agreement and the present meaning of the agreement as a whole must be seen in the light of the intent and the understanding of the parties. The interests involved arose as a product of the former marital relation between the decedent and John Richardson. These interests were brought to the latter marriage by Lillian Klinker at the time the agreement was entered into. It appears beyond argument that they were intended to be and remain completely segregated from interests in other unique lands which may have been acquired later. With regard to the specific parcels listed, the couple stated with crystal clarity in paragraph 2:

> *"The intention being that neither shall have any interest in the aforesaid real property of the other owned prior to the marriage any more than if they had never been married, and said intentions will apply in event said marriage is dissolved by divorce, annulment, or death."* (Emphasis added.)

The properties listed were described with particularity evincing the understanding that all interests in respect to them were to be governed by the stipulations of the contract. It would appear that both parties, whether knowingly or unknowingly, deemed the ownership to be undisputed and entire. This was their understanding at the moment of signing the agreement and throughout its existence. Nothing in the record indicates that they ever waivered from this conception. Even 16 years later, when she sought to convey her interests to the Tennessee Valley Authority,

Lillian Klinker acted as though the properties were entirely hers, both in her dealings with Ewing-Northern and with the other heirs. Those heirs conveyed deeds solely to her and not to the couple jointly. Although there may have been no legal or equitable obligation to do so, no complaint or objection was made by E. Ralph Klinker to any of these transactions until after his wife's death. We believe that the parties labored under one notion and that the defendant now seeks to interpose a mechanical application of the language contradictory to that understanding. The agreement uses comprehensive language calculated to sever Richardson properties from future Klinker acquisitions, regardless of the extent of ownership (known or assumed) in these unique and specific plots.

We affirm the decision of the circuit court of Hamilton County.

Affirmed.

KASSERMAN and KARNS, JJ., concur.