*In re* ESTATE OF RONALD E. ANDERSON, Deceased (James David Anderson *et al.*, Ex'rs, Petitioners-Appellees, v. Gertrude Lucille Anderson, Respondent-Appellant).

Fourth District No. 4—89—0699

Opinion filed March 28, 1990.—Rehearing denied April 25, 1990.

Charles C. Hall, of Welsch & Hall, of Danville, for appellant.

William Garrison, of Saikley, Garrison & Colombo, Ltd., of Danville, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

This appeal concerns a prenuptial agreement and life insurance proceeds. Prior to their marriage, respondent, Gertrude Lucille Anderson, and decedent, Ronald E. Anderson, entered into an antenuptial agreement (agreement). After decedent's death on May 23, 1988, respondent received $5,000 in life insurance proceeds pursuant to a Federal Employees Group Life Insurance policy insuring decedent's life and purchased by the Office of Personnel Management. In a citation of assets proceeding initiated by the coexecutors of decedent's estate, the trial court (probate division) concluded respondent was barred by the agreement from receiving the insurance proceeds. Respondent contends the agreement does not prevent her from receiving the proceeds under the default provisions of title V, section 8705, of the United States Code (5 U.S.C. §8705 (1988)), which governs Federal group life insurance. We affirm.

Respondent and decedent were married on January 30, 1980, in Danville, Illinois. On January 25, 1980, the parties entered into a prenuptial agreement. The agreement stated the parties were contemplating marriage and desired to execute an agreement "for the purpose of prescribing, limiting and determining the interest and control which each will have in the Estate of the other during their marriage, and after the death of one of them." The agreement also included a list of the assets and liabilities of both parties. Decedent revealed in the agreement he owned three parcels of real estate, along with life insurance with a cash value of $10,000 and other cash and bank de-

posits. Respondent owned one parcel of real estate and promissory notes, along with cash and bank deposits. Paragraphs 2 through 8 of the agreement read as follows:

"2. In the event of the death of the husband during the continuance of their marriage, the wife surviving him, then except as in this Agreement provided the wife shall receive nothing from the estate of the husband and she agrees that she will make no claim to any part of his estate and she hereby releases, waives and relinquishes all right of curtesy, dower, statutory fee, homestead, surviving spouse's award, right to renounce the Will of the husband, or other rights in and to the property, real or personal, which the husband now owns or may hereafter acquire.

3. Any property hereafter acquired, held or owned in the names of the parties as tenants by the entireties or joint tenants with right of survivorship, or which is in the name of either of them as trustee for the benefit of the other, or which is payable to either of them as co-owners, survivor or named beneficiary shall, upon the death of one of the parties, pass and be taken by the other as survivor or beneficiary.

4. Each party to this Agreement may make such disposition of his or her property by gift, trust, or Will as each sees fit, to or for the benefit of the other, and this Agreement shall not [affect] the right of the other party to receive such property as donee or beneficiary.

5. During the continuance of the marriage, each of the parties is to have the full right to own, control, and dispose of his or her separate property the same as if the marriage did not exist, and each of the parties is to have the full right to dispose of or and sell any and all real and personal property now or hereafter owned by either of them without the other party joining, and a transfer of property by either of the parties to this contract will convey the same title that the transfer would convey if the marriage had not existed. It is further agreed that in case either of the parties desires to mortgage, sell or convey his or her real or personal estate, the other will join in the deed of conveyance or mortgage as may be necessary to make the same effectual.

6. The purpose of this Agreement is to define and limit the claims and demands which each of the parties shall have against the estate of the other. Should either party die, then the rights of the other party as herein stipulated and defined

shall be the limit which the survivor shall have in the estate of the decedent, except for any other property passing to the survivor as described in Paragraphs 3 or 4. ***

7. This Agreement is entered into with full knowledge that each of the parties has a separate estate and each agrees that the amount hereinafter fixed and determined shall be sufficient participation in the estate of the other, unless either shall make additional provision for the other.

8. In the event of the prior death of the husband, then the wife agrees that unless additional provision is made for her by the husband, her participation in the estate and assets of the husband shall be limited to the following:

a. The husband has recently acquired the residence property at 203 Cedar Avenue, Danville, Illinois, and intends to improve and furnish the same; and in the event said property constitutes the marital residence of said parties at the time of the death of the husband, then the wife shall be entitled to receive the absolute fee simple title to said property, and the household furnishings therein, either as beneficiary of the husband's Will or as surviving joint tenant or as beneficiary of any trust to which said property may be conveyed by the husband. In the event said property does not constitute the marital residence of the parties at the time of the death of the husband, then the wife shall be entitled to receive the household furnishings of any residence which then does constitute the marital residence of the parties and the wife shall be entitled to receive the sum of $67,000.00 from the estate of the husband and the husband agrees to provide for such payment in a duly executed Will, said payment to be due the wife in lieu of said residential property.

b. The husband is now receiving a civil service pension and agrees to name the wife as survivor annuitant, which, in the event the wife survives the husband, would at present, entitle the wife to a monthly pension of approximately $761.00. It is understood that such an election to designate the wife as survivor annuitant will not be effective for a period of 1 year following the marriage of the parties and therefore, until such election shall be effective, the husband agrees that he will designate the wife as beneficiary of his three life insurance policies, the proceeds of said policies to be in excess of $15,000.00.

c. The wife shall be entitled to receive from the estate of

the husband, any passenger automobile which is in the name of the husband at the time of his death."

Following decedent's death, his will, dated August 3, 1978, and codicil dated February 3, 1980, were admitted to probate. By codicil, decedent bequeathed to respondent the real estate and personal property as provided for in paragraphs 8(a) and 8(c) of the agreement. The residue of decedent's estate passed to his three children from his first marriage, Pamela Sue Whitaker, Steven Ronald Anderson and James David Anderson. Steven and James were appointed coexecutors of the estate on June 22, 1988.

On March 9, 1989, the coexecutors filed a petition for citation in the circuit court for Vermilion County (probate division), alleging respondent received certain life insurance proceeds properly belonging to the estate. At a hearing on April 20, 1989, respondent testified she received $5,000 as the proceeds of a life insurance policy from the office of Federal Employees Group Life Insurance (Federal office). Respondent stated she knew nothing of a Federal policy of life insurance prior to receiving the forms to apply for the death benefits.

The record includes two letters addressed to respondent from the Federal office. The letter dated October 12, 1988, states the policy on decedent's life was purchased by the Federal government and this policy provided since there was no designated beneficiary, payment was to be made to the surviving spouse. A second letter to respondent dated March 9, 1989, stated Federal law preempts State law in regard to the payment of the Federal Employees Group Life Insurance and, therefore, respondent was the payee of the proceeds. The policy is not included in the record.

On May 4, 1989, the coexecutors filed a motion for turnover of the aforementioned life insurance proceeds to the estate. The coexecutors alleged respondent was not entitled to the proceeds by virtue of the agreement, which expressly limited respondent's rights and interest in the decedent's estate. On August 9, 1989, the trial court found the monies received by respondent "are included within the terms of the ante nuptial agreement *** and are properly an asset of the estate." Respondent was ordered to turn over the proceeds to the estate. The order was stayed pending this appeal.

Respondent argues the language of the agreement does not preclude her from receiving the insurance proceeds. Respondent first claims the proceeds are not part of the decedent's "estate" and the agreement concerns only property included in the probate estate. Second, respondent maintains the language in paragraph 3 of the agreement allows respondent to receive proceeds as a "survivor." Third,

paragraph 4 of the agreement allowed both respondent and decedent to give additional property to each other during their respective lifetimes. Last, respondent points out that the decedent had eight years within which to designate another beneficiary of the insurance if he did not intend for the respondent to receive the proceeds. It is respondent's contention that the agreement is clear and unambiguous in supporting respondent's right to the proceeds.

The coexecutors argue the agreement concerns more than the probate estate and point to the language in paragraph 2. The coexecutors further maintain the language of paragraph 3 of the agreement referring to "survivor" does not extend to this situation but was intended to include only those circumstances where decedent *actively named* respondent as a beneficiary of additional property. The coexecutors also refer to paragraph 6 of the agreement, which expressly states the purpose of the agreement was to limit and define the claims and demands of each party against the estate of the other. The coexecutors reject respondent's argument that decedent made a "gift" of the proceeds to respondent by not naming an alternate beneficiary, and rely on *Genung v. Hagemann* (1968), 103 Ill. App. 2d 409, 242 N.E.2d 790.

In her reply brief, respondent relies on several divorce cases where the court stated that where life insurance proceeds are not specifically addressed in a property settlement agreement, the agreement is not construed as a renunciation of the right to receive the proceeds. (*Williams v. Gatling* (1989), 186 Ill. App. 3d 21, 542 N.E.2d 121; *O'Toole v. Central Laborers' Pension & Welfare Funds* (1973), 12 Ill. App. 3d 995, 299 N.E.2d 392; *Cox v. Employers Life Insurance Co.* (1975), 25 Ill. App. 3d 12, 322 N.E.2d 555.) Respondent further states her interest in the life insurance policy during decedent's lifetime was only a mere *expectancy* and decedent could have changed or named another beneficiary at any time. Because he did not, it is clear decedent intended respondent to receive the proceeds.

■ ■ In construing an antenuptial agreement, the rules governing construction and interpretation of contracts generally are applicable. (*Guhl v. Guhl* (1941), 376 Ill. 100, 109-10, 33 N.E.2d 185, 189.) Prenuptial agreements should be considered in their entirety to ascertain the general scope or purpose and to give effect to the real intentions of the parties. (*Guhl*, 376 Ill. at 110, 33 N.E.2d at 189; *Genung*, 103 Ill. App. 2d at 414, 242 N.E.2d at 793; *In re Estate of Klinker* (1979), 80 Ill. App. 3d 28, 30, 399 N.E.2d 299, 301.) Resort will be had to the recitals of a contract if necessary to determine the intention of the parties and of the operative provisions of the agreement.

(*Guhl*, 376 Ill. at 110, 33 N.E.2d at 189.) A right in the estate of a spouse can be relinquished without the use of precise words to that effect, providing the contract contains language sufficiently showing it was the intention of the parties to release such a right in an antenuptial agreement. *Guhl*, 376 Ill. at 110, 33 N.E.2d at 190; *Genung*, 103 Ill. App. 2d at 414, 242 N.E.2d at 793.

 As noted, respondent first argues the agreement concerned only decedent's probate estate. The agreement repeatedly referred to "estate," yet this term is not defined in the agreement. In ordinary usage, the "estate" refers to the degree, quantity, nature, and extent of interest which a person has in real or personal property. (Black's Law Dictionary 490 (5th ed. 1979).) Under the Probate Act, "estate" refers to all interest in property, real and personal, to which the deceased may be entitled. (Ill. Rev. Stat. 1973, ch. 3, par. 1 *et seq.*; *In re Estate of Rudder* (1979), 78 Ill. App. 3d 517, 397 N.E.2d 556; *In re Estate of Weldon* (1949), 337 Ill. App. 270, 85 N.E.2d 840.) Respondent cites no authority for this argument. Further, a reading of the entire agreement suggests the parties intended to include property outside the so-called "probate estate."

In paragraph 8(b), decedent agreed to designate respondent as beneficiary of his civil service pension. In this paragraph, reference is made to three life insurance policies. Further, the life insurance is again referred to on the schedule for assets and liabilities of both parties. While the parties seem to agree that this reference to life insurance does not refer to the policy in question, the inclusion of a pension and life insurance in the agreement evidences an intent that the parties were considering their *entire* estate and not only their probate estate. We find this argument has no merit.

 Next, we believe respondent's interpretation of one word in paragraph 3 for support that respondent is entitled to the insurance as "survivor" is strained. Standing alone, paragraph 3 lends some support for respondent's position because she received the proceeds as surviving spouse pursuant to a Federal statute. However, when considered together with paragraph 4, the language evidences that the parties contemplated the making of *inter vivos* gifts to each other, by trust or outright gift, and the possibility of allowing for further dispositions by will. As coexecutors point out, paragraph 4 evidences an intent that the parties may give additional property to each other by *actively* including their spouse's name as coowner, beneficiary, donee, or *survivor* but does not extend to this situation where respondent received the proceeds by default under a Federal statute.

Even if we assume some validity to respondent's "survivor" argu-

ment, other provisions of the agreement evidence a contrary intent. The opening recitals in the agreement state the parties entered into the agreement to *prescribe, limit, and determine* the interest and control each will have in the estate of the other. Paragraph 2 states the respondent, except as provided in the agreement, shall receive nothing from the decedent's estate; that respondent agrees to make no claim to any part of his estate; and that respondent *releases, waives, and relinquishes all right* of curtesy, dower, statutory fee, homestead, surviving spouse's award, right to renounce the will of the husband, *and other rights* in and to the property, real and personal, which decedent then owned or may acquire. Paragraphs 6, 7, and 8 restate the purpose of the agreement and use such terms as: *fix, define,* and *limit.*

The entire agreement in this case establishes the parties intended to *limit* their interest in the estate of the other by the terms of the agreement. The provisions allowing each party to give additional property to the other "by gift, trust, or Will" do not extend to the situation presented here where the decedent failed to make a beneficiary designation for the life insurance. The *Genung* court considered a similar provision in an antenuptial agreement and found an affirmative act was required by the donor-spouse, such as ordering or directing the giving of the property or by making a will. Intestacy was analogous to a failure to act. (*Genung,* 103 Ill. App. 2d at 417, 242 N.E.2d at 795.) We find this analysis persuasive.

In the present case, decedent failed to designate by written document his beneficiary of the life insurance. Therefore, the proceeds were payable to respondent by operation of law. The fact the insurance proceeds must be paid to respondent under section 8705 does not affect the litigation between respondent and the coexecutors regarding entitlement to the proceeds.

As noted, respondent, in her reply brief, directs this court to three divorce cases involving life insurance. All three cases may be distinguished from the case presented because they involve a *divorce* situation where a former spouse was the *named* beneficiary of a policy of insurance insuring his former spouse. In all three cases, the divorce decree or settlement agreement did not mention insurance policies specifically. The courts held that the agreement or decree did not bar the former spouse from receiving benefits as named beneficiary of the policy. We find this rule is confined to a divorce situation with a named beneficiary and is not applicable to the situation presented by this appeal.

Based on the language in the agreement, we conclude the insur-

ance policy was included within the provisions of the agreement and the respondent is barred by the agreement from keeping the proceeds.

■ Respondent next argues even if the language of the agreement could be construed to bar respondent from receiving the proceeds, the Federal preemption doctrine applies to prohibit the parties from making an agreement regarding the proper beneficiary of Federal life insurance. The coexecutors argue Federal preemption has no applicability to this case and the Federal statutes relied upon by the respondent concern only the relationship between the payor (office of Federal Employees Group Life Insurance) and respondent-payee as the surviving widow and do not concern this litigation between the respondent and decedent-insured's estate.

Title V of the United States Code concerns Federal Employees Group Life Insurance (5 U.S.C. §8701 *et seq.* (1988)). Section 8709(d)(1) provides:

"The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions." (5 U.S.C. §8709(d)(1) (1988).)

Section 8705(a), which governs the payment of death benefits, provides:

"(a) The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office ***. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

Second, if there is no designated beneficiary, to the widow or widower of the employee." (5 U.S.C. §8705(a) (1988).)

Respondent was paid as "widow" pursuant to section 8705(a) because no beneficiary was designated by the decedent. Respondent argues the prenuptial agreement was not an effective change of beneficiary designation as required by this provision and, therefore, she is entitled to the proceeds. Respondent cites two Federal cases, *Huff v. Met-*

*ropolitan Life Insurance Co.* (6th Cir. 1982), 675 F.2d 119, and *Metropolitan Life Insurance Co. v. Manning* (2d Cir. 1977), 568 F.2d 922, in support of her position.

In our view, *Huff* and *Manning* are distinguishable from the case before us because these cases involve suits by individuals against an insurer for proceeds payable pursuant to section 8705. That is not the situation presented here. In fact, coexecutors seem to agree that pursuant to section 8705, the government-insurer was required to pay the proceeds to respondent as decedent's widow.

We find the Federal preemption issue to be without merit. We note, as did the courts in *Huff* and *Manning*, that Congress, when enacting the current provisions in section 8705(a), intended to alleviate the administrative difficulties previously suffered by the Civil Service Commission and the insurance companies when paying death benefits and to avoid serious delay in paying these benefits to the survivors of Federal employees. While the statute dictates the order of payment where no beneficiary designation has been made, we conclude it does not preclude a third party from bringing an action against the payee to compel payment of the proceeds to another party properly entitled to the proceeds. Further, a payee under the aforementioned default provisions is not prohibited from entering into a private contract regarding ultimate disposition of any benefits payable under the Federal statute. We acknowledge a recent case from the Seventh Circuit, *Rollins v. Metropolitan Life Insurance Co.* (7th Cir. 1988), 863 F.2d 1346, which provides support for our conclusion.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.