(No. 96862.—

MARTIN ROTH *et al.*, Appellees, v. GERALD J. OPIELA *et al.*, Appellants.

*Opinion filed June 17, 2004.*

Michael D. Ryan, of Ryan, Bennett, Radloff & O'Brien, of Mattoon, for appellants Gerald J. Opiela and Frank J. Weber.

John P. Ewart, of Craig & Craig, of Mattoon, for appellant Great Southwest Oil & Gas Corporation.

Robert L. Douglas, of Robinson, for appellees.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

This case concerns the proper interpretation of a stock purchase agreement between a closely held corporation and its shareholders. The stock purchase agreement at issue contains a mandatory buy-sell provision which

provides that, upon the death of a shareholder in the corporation, the shareholder's estate must sell the shareholder's stock back to the corporation. An amendment to the agreement further provides, however, that if the shareholder has "specifically bequeathed or otherwise given" the stock to a direct descendant or descendants, then the mandatory buy-sell provision will not apply. The question regarding the stock purchase agreement which we must decide is this: When a shareholder of the corporation dies without a will, and his descendants inherit by intestate succession, can it be said that the shareholder "gave" his descendants their inheritance so as to fall within the exception to the mandatory buy-sell provision of the stock purchase agreement? The appellate court concluded that the answer to this question is "yes," if it is proven that the shareholder was aware of the laws of intestacy. No. 5—02—0492 (unpublished order under Supreme Court Rule 23). We conclude that the correct answer to the question is "no" and, for that reason, reverse the judgment of the appellate court.

## BACKGROUND

The following facts, which are not in dispute, are taken from the pleadings and other materials of record. Great Southwest Oil & Gas Corporation (Great Southwest) is a Nebraska corporation doing business in Illinois. At the time of its incorporation, Great Southwest had three shareholders, Richard Roth, Gerald J. Opiela and Frank J. Weber. Each shareholder owned 1,000 shares of stock.

On May 9, 1989, the three shareholders entered into a stock purchase agreement with Great Southwest. In this agreement, the shareholders and the corporation expressed a desire to have the stock of Great Southwest "remain closely held in order to promote harmonious management of the Corporation's affairs." To this end, the agreement included a mandatory buy-sell provision

which provides that, "[u]pon the death of a shareholder, his estate shall sell and the Corporation shall purchase the shares which were owned by the deceased Shareholder at his death."

On March 18, 1997, Gerald J. Opiela conveyed his shares of Great Southwest stock to a qualified terminable interest property trust.

On December 22, 1997, Great Southwest and the three shareholders adopted a five-paragraph amendment to the stock purchase agreement. The majority of this amendment relates to the creation of a right on the behalf of the original stockholders to transfer stock to a direct descendant without the approval of the other shareholders. Paragraph one of the amendment expressly authorizes the original shareholders to "make a transfer, by gift or otherwise," of Great Southwest stock to a direct descendant, provided that the aggregate number of shares so given does not exceed 249. Paragraphs two and three of the amendment set forth optional buy-sell provisions which, in the event of certain triggering events, give an original shareholder the first option to buy back stock that has been given to a direct descendant.

The fourth paragraph of the amendment to the stock purchase agreement, which is the provision at issue in this case, sets forth an exception to the mandatory buy-sell provision of the stock purchase agreement. Paragraph four states that the buy-sell provision will not take effect if an original shareholder dies "having specifically bequeathed or otherwise given" his shares of Great Southwest stock to a direct descendant or descendants. Paragraph five of the amendment states that no transfer made pursuant to the amendment will be effective until the transferee agrees, in writing, to be bound by the terms of the stock purchase agreement.

On December 24, 1997, Frank Weber transferred 100 shares of Great Southwest stock to each of his two sons.

That same day, Richard Roth also transferred 100 shares of Great Southwest stock to each of his two children, Martin Roth and Kerry Roth Zerla. All the children signed statements indicating their agreement to be bound by the terms of the stock purchase agreement.

Richard Roth died intestate on February 4, 2001. Under Illinois' statute of descent (755 ILCS 5/2—1(a) (West 2000)), 50% of Richard's estate was inherited by his widow, Rebecca Roth. The remaining 50% of Richard's estate went to his children, with each child receiving 25%. On April 7, 2001, Rebecca executed a disclaimer to any interest in her husband's Great Southwest stock, pursuant to section 2—7 of the Probate Act of 1975 (755 ILCS 5/2—7 (West 2000)). Because of the disclaimer, the 400 shares of Great Southwest stock that would have passed by intestate succession to Rebecca went, instead, to the children, with each child receiving 50%. Thus, in total, each child was to inherit 400 shares of the 800 shares of stock owned by Richard at the time of his death. Together with the previous 100 shares of Great Southwest stock which they had received, the children were to own 500 shares of stock each, or a combined one-third of the corporation's outstanding shares.

On April 18, 2001, Richard Roth's children, the plaintiffs in this case, filed a complaint for declaratory judgment in the circuit court of Crawford County. Plaintiffs sought a declaration that they had the right to inherit the 800 shares of Great Southwest stock which were owned by Richard at the time of his death. The complaint named as defendants Gerald J. Opiela, both individually and as trustee of the qualified terminable interest property trust dated March 18, 1997, Frank J. Weber and Great Southwest.

Plaintiffs and defendants filed cross-motions for summary judgment. In support of their motion, plaintiffs contended that the mandatory buy-sell provision of the

stock-purchase agreement was not applicable to the 800 shares of Great Southwest stock owned by Richard Roth. According to plaintiffs, the fact that Richard died intestate and that Rebecca Roth issued the disclaimer meant that the 800 shares of stock had been "otherwise given" to them as described in the amendment to the stock purchase agreement. Therefore, plaintiffs alleged, the exception to the mandatory buy-sell provision applied and Richard's estate was under no obligation to sell the shares of stock to the corporation.

Defendants disagreed. Defendants argued that, under the law of Illinois, intestacy does not constitute an affirmative act of giving and, therefore, that Richard had not "otherwise given" the 800 shares of stock to plaintiffs. Thus, in defendants' view, the exception to the mandatory buy-sell provision did not apply and Richard's estate was required to sell the shares of stock to Great Southwest. Following a hearing, the circuit court granted defendants' motion for summary judgment.

On appeal, the appellate court reversed. The appellate court stated:

"We agree with the trial court that the term 'otherwise given' is not ambiguous because this term implies a conscious act of giving; however, we cannot agree with the trial court's granting of a summary judgment. The record before us fails to indicate whether or not Richard Roth intended to give all of his shares to the plaintiffs. While Richard Roth did not specifically bequeath the shares to the plaintiffs, there was no showing that he did not intend for his children to inherit the stock. The fact that he gave each of his children 100 shares of stock prior to his death suggests that he may have wanted them to inherit the stock. Mr. Roth may have been cognizant of the laws of intestacy and may have known that his widow would disclaim her interest in the stock. On the record before us, we cannot be sure whether Mr. Roth's intestacy was a conscious act of giving or an act of indifference." No. 5—02—0492.

Having concluded that summary judgment was inappropriate, the appellate court remanded the cause for trial. Defendants thereafter filed a petition for leave to appeal in this court, which we allowed.

## ANALYSIS

Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2000); *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). We review the grant of summary judgment *de novo. Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141, 149 (2003).

Before this court, the parties do not dispute the essential facts. Plaintiffs and defendants agree that Richard Roth died intestate, that Rebecca Roth issued a disclaimer to the 800 shares of Great Southwest stock which Richard owned at the time of his death and that, under the laws of intestate succession, the stock would ordinarily devolve to plaintiffs. The parties do contest, however, the meaning of paragraph four of the amendment to the stock purchase agreement and its application to this case. Paragraph four of the amendment states:

> "If an original SHAREHOLDER dies having specifically bequeathed or otherwise given his shares of stock in the CORPORATION to a direct descendant or descendants, then the provisions of the STOCK PURCHASE AGREEMENT for mandatory sale and purchase of stock by the CORPORATION and the other SHAREHOLDERS shall not be applicable, and said transfer shall be permissible, and the CORPORATION shall retain all proceeds from any life insurance policy which insured said SHAREHOLDER as for the absolute property of the CORPORATION."

As they did in the courts below, plaintiffs acknowledge that Richard Roth did not "specifically bequeath" his

800 shares of Great Southwest stock to them. Plaintiffs emphasize, however, that the amendment to the stock purchase agreement pertains to shares that are "*otherwise* given" (emphasis added) to a descendant or descendants. Plaintiffs again assert that, through the laws of intestate succession, Richard "effectively conveyed" his shares of stock to plaintiffs once Rebecca Roth executed her disclaimer. Thus, in plaintiffs' view, the 800 shares of stock were "otherwise given" to them.

Defendants, in response, maintain that intestacy is not an act of giving and, therefore, that Richard did not give the stock to plaintiffs in any sense of the term. In support of this position, defendants cite two decisions from our appellate court, *Genung v. Hagemann,* 103 Ill. App. 2d 409 (1968), and *In re Estate of Anderson,* 195 Ill. App. 3d 644 (1990).

At issue in *Genung* was an antenuptial agreement between Eleanor Genung and Gilbert Genung. The agreement provided, in part, that "nothing herein shall be construed to be a bar to either party to this agreement giving any property of which they may be possessed to the other party by will or otherwise." Gilbert died intestate. Eleanor thereafter filed a declaratory judgment action in which she maintained that, because the antenuptial agreement stated that property could be given by will or "otherwise," she had a right to an intestate's share of her late husband's estate. The defendants disputed this construction of the antenuptial agreement and maintained that to give property "by will or otherwise" meant that an affirmative act of either making a will or *inter vivos* gift was required. The appellate court agreed, stating:

> "The statement that either party may give property to the other is followed by the statement that each shall 'control' their personal estate and do with it *'whatsoever they wish and will, by his or her orders or directions, or by will ... .'* (Emphasis added.) We believe this indicates an intention

that an affirmative act of ordering, or directing, or making a will, is intended if the other is to take property over which he or she has by the agreement given up all rights. We do not construe the agreement to mean that a failure to act, such as intestacy, is the 'giving' or the 'doing with the properties' specified in the agreement." *Genung*, 103 Ill. App. 2d at 417.

In *Anderson*, which involved the interpretation of a prenuptial agreement, the appellate court agreed with, and followed, the logic of *Genung. Anderson*, 195 Ill. App. 3d at 651. In so doing, the court noted with approval the *Genung* court's conclusion that "[i]ntestacy was analogous to a failure to act." *Anderson*, 195 Ill. App. 3d at 651.

We find the appellate court's holdings in *Genung* and *Anderson* persuasive and applicable here. In this case, the phrase "otherwise given" appears in the amendment to the stock purchase agreement immediately after the words "specifically bequeathed"—words which connote an affirmative action taken on the part of the original shareholder. Further, as noted previously, the phrase "otherwise given" is found in the body of an amendment that is largely concerned with creating a right on behalf of the original stockholders to transfer stock by gift to direct descendants. In this context, it is appropriate to give the words "otherwise given" their plain and ordinary meaning and to assume that the words refer to some affirmative act of transfer, such as an *inter vivos* gift.

The appellate court below agreed that the phrase "otherwise given" unambiguously refers to "a conscious act of giving." The court reasoned, however, that if Richard Roth was aware of the laws of intestacy, and if he was aware that his widow would disclaim any interest in his stock, then it could be said that he "gave" the 800 shares of stock to plaintiffs. We disagree. Intestacy, by definition, is not taking action with respect to the

distribution of one's estate. See, *e.g.*, *Genung*, 103 Ill. App. 2d at 417. To hold, as the appellate court did, that intestacy could be "a conscious act of giving" is to adopt a contradiction. It is the equivalent of saying that not taking action is, in fact, acting. We reject that proposition. Accord *Genung*, 103 Ill. App. 2d at 417; *Anderson*, 195 Ill. App. 3d at 651. The 800 shares of Great Southwest stock at issue in this case were not given to plaintiffs by Richard Roth. Rather, the stock devolved to plaintiffs by operation of law, *i.e.*, through intestate succession and Rebecca Roth's disclaimer.

Plaintiffs cite *Brown v. Momar*, 201 Ga. App. 542, 411 S.E.2d 718 (1991), as persuasive authority for their contention that the 800 shares of stock were "otherwise given" to them. That case is of no relevance here since it involved the interpretation of a will rather than the question of whether intestacy could be considered an act of giving.

In the case at bar, the 800 shares of stock owned by Richard Roth at the time of his death were not "specifically bequeathed or otherwise given" to plaintiffs. Accordingly, the exception to the mandatory buy-sell provision, as set forth in paragraph four of the amendment to the stock purchase agreement, is inapplicable. The circuit court therefore properly granted summary judgment in favor of defendants.

## CONCLUSION

For the forgoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court granting defendants' motion for summary judgment is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*