830 So.2d 1188 (2002)
Peggy Spradling McCORD, Executrix
v.
Nina M. SPRADLING.
No. 97-CT-01276-SCT.
Supreme Court of Mississippi.
November 21, 2002.
*1189 Cliff R. Easley, Jr., Bruce, attorney for appellant.
Lindsey C. Meador, Cleveland, attorney for appellee.
EN BANC.

ON WRIT OF CERTIORARI
COBB, J., for the Court.
¶ 1. Peggy Spradling McCord, executrix of the estate of J.W. Spradling, appealed the decision of the Calhoun County Chancery Court which awarded Nina M. Spradling (the widow) a judgment from Mr. Spradling's estate. On appeal, the executrix asserted five assignments of error in the trial court's:
(1) awarding the proceeds from Mr. Spradling's Federal Employee Group Life Insurance Act (FEGLIA), 5 U.S.C. §§ 8701-8716, policy to the widow;
(2) reimbursing the widow for the funeral expenses paid by the widow from funds in a joint bank account;
(3) awarding the widow
(a) all the 1996 cotton land rent, and
(b) half of the equitable interest in the 1996 hay crop;
(4) denying the executrix's claim for attorney fees and costs; and
(5) not requiring the widow to submit the lower court judgment to the executrix for approval or criticism as to form prior to the chancellor signing it.
¶ 2. The Court of Appeals initially affirmed in part and reversed and remanded *1190 in part, and the widow filed a motion for a new hearing. Although the Court of Appeals denied the motion, it withdrew the original opinion and substituted a revised opinion, which (1) affirmed the award of the FEGLIA proceeds to the widow and the finding of no constructive trust, but finding the proceeds were subject to a breach of contract claim based on the antenuptial agreement; (2) affirmed the reimbursement of funeral expenses; (3) reversed and rendered on the cotton rent check, but affirmed on the hay proceeds; (4) affirmed the denial of attorney fees; and (5) affirmed on the issue of the form of the judgment. Further, the Court of Appeals remanded the case to the chancery court for consideration of whether the antenuptial agreement was breached by the widow, and if so, a determination as to the measure of damages for such breach.
¶ 3. The widow timely filed a petition for writ of certiorari with this Court, which we granted. The sole issue for which certiorari was sought concerns $22,050 in proceeds from the FEGLIA policy, and is summarized as follows:
DID THE COURT OF APPEALS ERR IN HOLDING THAT, ALTHOUGH THE WIDOW WAS ENTITLED TO THE FEGLIA PROCEEDS AND WAS IMMUNE FROM A COURT-IMPOSED CONSTRUCTIVE TRUST, SHE WAS NOT IMMUNE FROM A BREACH OF CONTRACT ACTION STEMMING FROM HER ACTIONS?
¶ 4. We conclude that it was error for the Court of Appeals to affirm the chancery court's refusal to impose a constructive trust. Thus as to this issue, we reverse the decision of the Court of Appeals and remand to the chancery court with instructions to impose a constructive trust on the FEGLIA proceeds in favor of Mr. Spradling's children. All other issues addressed by the opinion of the Court of Appeals, and not addressed by this opinion, are affirmed.

FACTS
¶ 5. The following statement of facts is taken from the opinion of the Court of Appeals:
¶ 6. The decedent, J.W. Spradling, and the widow, Nina M. Spradling, first met on February 13, 1995 and were married on March 18, 1995. At the time of marriage, Mrs. Spradling was seventy-two years of age and had been married previously to Knox Barfield, who died on December 26, 1989. Four children were born of the marriage between the widow and Mr. Barfield. The decedent, J.W. Spradling, was eighty years of age at the time of his death on November 25, 1996, and had been married previously to Nadine Spradling, who died in 1993. Eight children were born of the marriage between J.W. and Nadine. Two of those children predeceased the decedent.
¶ 7. On or about February 23, 1995, ten days after the decedent, J.W. Spradling, and the widow, Nina Myrl Spradling, met, they had an antenuptial agreement prepared for them. Said agreement was executed on March 1, 1995. The antenuptial agreement ... provided that each of the parties would have the full control and management of all property that they then owned or thereafter acquired or accumulated. They also reserved the right to make disposition of the property owned by each, according to the will and pleasure of each, so that the property of each would descend to their respective child or children, or the heirs of their body, at the respective party's death. Said agreement further provided that it was the intent and purpose of each party to own, control and *1191 be secure in the full right, title and interest in and to all real or personal property which each then owned, to the same extent that each would, if they remained unmarried. Each of the parties agreed to waive and release any and all of his or her interest in the property of the other, either as a surviving spouse or otherwise. Each of said parties contracted and agreed to make no claim against the estate of the other on the basis of being the spouse of the other. The widow admitted that it was the intent of both, she and the decedent, that everything each owned would be left to their respective children.
¶ 8. A bank account was acquired in the joint names of the decedent, the widow, and a daughter of each. The decedent conveyed, by warranty deed, all of his real property to his children, but reserved unto himself, and if married at his deathunto his wife also, a life estate in the marital domicile and one acre of land. The last will and testament of J.W. Spradling, probated in this cause, left everything to his children.
¶ 9. The decedent was retired from the U.S. Corps of Engineers. He had a group life insurance policy with Metropolitan Life Insurance Company through the Federal Employees Group Life Insurance Act (FEGLIA). The designated beneficiary of the policy was the decedent's predeceased first wife, Nadine Spradling. The effect of this situation was that there was no designated beneficiary at the time of the decedent's death. The widow and the decedent's children testified at trial that it was their understanding that the proceeds from the FEGLIA insurance policy would go to the children.
¶ 10. The widow testified at trial that she telephoned the insurance company after the death of her husband to inquire about medical insurance and was informed that she was entitled to the proceeds from the life insurance policy. Claim forms sent to the widow were completed and returned, and the sum of $22,050.62 was paid to her pursuant to 5 U.S.C. § 8705 and the FEGLIA Regulations. The order of precedence for payment of the decedent's life insurance was the widow, if she made a claim, and then to the children of the decedent, if the widow made no claim within one year. It is the executrix's contention that the proceeds of the life insurance policy belong to the estate.
McCord v. Spradling, 2000 WL 1819539, at ¶¶ 6-10 (Miss.Ct.App. Dec.12, 2000).

DISCUSSION
¶ 6. Because Mr. Spradling's first wife was the named beneficiary on the FEGLIA policy, and she had predeceased him, the FEGLIA statute mandated that the widow would be the recipient of the insurance proceeds. The statute provides the following order of precedence in paying a death claim:
(a) Except as provided in subsection (e), the amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office
....
Second, if there is no designated beneficiary, to the widow or widower of the employee.
Third, if none of the above, to the child or children of the employee and descendants *1192 of deceased children by representation.
....
5 U.S.C. § 8705(a)(emphasis added).
¶ 7. However, in some circumstances courts have imposed a constructive trust as an equitable remedy to prevent unjust enrichment. The Court of Appeals cited Saulsberry v. Saulsberry, 223 Miss. 684, 690, 78 So.2d 758, 760 (1955), for the definition of a constructive trust:
A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, to hold and enjoy. 54 Am.Jur., Trusts, Sec. 218. A constructive trust is an appropriate remedy against unjust enrichment. Ibid., Sec. 219.
(emphasis added).
¶ 8. The Court of Appeals held that a "constructive trust could not be utilized to preempt the widow's entitlement to the insurance proceeds under the order of precedence set forth in the statute creating FEGLIA, and the insurance proceeds were properly paid to the widow." McCord v. Spradling, 2000 WL 1819539, at ¶ 28 (Miss.Ct.App. Dec.12, 2000). However, the majority opinion went on to hold that the executrix and the children were not without a remedy:
¶¶ 32. The final question here then is not which designation of beneficiary provision controls but whether the executrix and beneficiaries of the decedent's estate may pursue a claim against the widow for an alleged breach of contract, i.e., breach of the antenuptial agreement. The dissent reads Metropolitan[1] and the other authorities cited to stand for the proposition that a designation of beneficiary under the FEGLIA or a beneficiary determined by the order of precedence under the FEGLIA trumps the entire provisions of the antenuptial agreement. We do not read Metropolitan so broadly Metropolitan simply establishes the preeminence of the beneficiary provision under FEGLIA. It does not, in the least, address the question of whether a beneficiary may legally enter into a contract under state law to forego applying for life insurance proceeds of a policy issued under FEGLIA. In a nutshell, this is what the final issue in this case is all about.
....
¶ ¶ 41. The purpose of the order of precedence provision and paramount right of beneficiary designation under FEGLIA is to ensure that the person or persons designated by the insured in fact receive the proceeds of his life insurance policy upon his death, or in the case of a nondesignation, that those whom the law imputes to him, likewise receive the same. Here, the widow's action appears to prevent the persons who, according to *1193 her own testimony, were the ones to whom the decedent wanted the proceeds to go. This fact not withstanding however, we want to make it exceedingly clear that, under the law as discussed, the widow is entitled to the proceeds. We simply hold that she is not immune from a breach of contract action stemming from her actions. Though the breach of contract claim may arise out of action taken in relationship to the subject matter of the policy proceeds, it is a distinct and different issue from the right of entitlement to the proceeds of the insurance policy.
McCord v. Spradling, 2000 WL 1819539, at ¶ ¶ 32, 41. The Court of Appeals remanded the case to the trial court for consideration of whether the antenuptial agreement was breached by the widow, and if so, a determination of the measure of damages for such breach.
¶ 9. On petition for certiorari, the widow argues that the Court of Appeals erred by "carving out a new exception to overwhelming federal and state authority" which holds that the order of precedence in FEGLIA cannot be overridden by antenuptial agreements or other contractual agreements. The widow claims that this ruling by the Court of Appeals puts Mississippi "in the most extreme minority position" concerning this issue. In support of this position, the widow cites federal cases: Metropolitan Life Ins. Co. v. Sullivan, 96 F.3d 18 (2d Cir.1996); Metropolitan Life Ins. Co. v. Christ, 979 F.2d 575 (7th Cir. 1992); Dean v. Johnson, 881 F.2d 948 (10th Cir.1989); Huff v. Metropolitan Life Ins. Co., 675 F.2d 119 (6th Cir.1982); Metropolitan Life Ins. Co. v. Thompson, 968 F.Supp. 312 (S.D.Miss.1997). The widow also cites Ridgway v. Ridgway, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). Finally the widow cites the Alabama Supreme Court case of Metropolitan Life Insurance Co. v. Potter, 533 So.2d 589 (Ala.1988), in support of her position.
¶ 10. The widow is correct in asserting that the overwhelming federal authority which has ruled on this issue has held that FEGLIA preempts prior contractual agreements to the contrary, preempts prior divorce decrees to the contrary, and negates attempts to impose constructive trusts over insurance proceeds payable under FEGLIA.[2] The widow is also correct in asserting that the U.S. Supreme Court's holding in Ridgway, a case interpreting the Serviceman's Group Life Insurance Act (SGLIA), lends some credence to her preemption argument. Finally, the widow is correct in asserting that the Alabama Supreme Court, in Potter, has held that FEGLIA preempts state equitable claims as the federal courts have done. However, the widow is not correct in asserting that the overwhelming state authority has come to the same conclusion. In fact, Alabama may be the only state that has found federal preemption, while at least six other statesTexas, North Carolina, Illinois, Missouri, Pennsylvania, and New Jersey have held just the opposite. Also, while this Court has not specifically dealt with preemption in the FEGLIA context, we have dealt with preemption in regard to another federal insurance program, the Employee Retirement Income Security Act (ERISA). We will examine the cases from those six states, and this Court's ERISA case, in order.
A. TexasRoberts v. Roberts
¶ 11. In Roberts v. Roberts, 560 S.W.2d 438, 438 (Tex.Civ.App.1977), the issue before *1194 the Texas court was whether the deceased federal employee's widow or the children of his first marriage were entitled to the proceeds of his life insurance policy made available under FEGLIA. In Roberts, the divorce decree ending the federal employee's (Mr. Roberts's) first marriage provided that his four children would be sole beneficiaries of all insurance policies insuring his life. Id. However, upon remarriage, Mr. Roberts signed a "designation of beneficiary" form, naming his new wife as his beneficiary. Id. The Texas court first noted that FEGLIA does not have a statutory provision precluding the use of the equitable remedy of constructive trust once the proceeds are in the hands of the beneficiary. Id. at 438. The Texas court then further stated:
Appellant [the first wife] contends the trial court erred in overruling her motion for summary judgment because she was the named beneficiary in the policy and as a matter of law was entitled to the proceeds. Appellant incorrectly construes the judgment of the trial court. The court specifically recognized and held that appellant was the named beneficiary in the policy and held that legal title to the proceeds vested in her. The court did not hold the children to be entitled to the proceeds as beneficiaries under the policy. The trial court did hold that under the facts of this case the children held a vested equitable interest in and title to the proceeds of the insurance policy. The judgment of the trial court did not in any manner change, alter, or affect the designated beneficiary of the policy and did not, in any manner, contravene the provisions of the Federal statutes governing the procedures applicable to naming the designated beneficiary. We hold that the trial court's action in impressing a constructive trust in favor of appellees upon the legal title in and to the policy proceeds which was decreed by the court to be vested in appellant was proper, and the judgment of the trial court is affirmed.
Id. at 440 (emphasis added).
¶ 12. In sum, in a case similar to the case sub judice, the Texas court distinguished between a named beneficiary's entitlement to be paid the FEGLIA funds and a third party's equitable right to some portion of those funds by way of a constructive trust.
B. North CarolinaBarden v. Metropolitan Life Insurance Co.
¶ 13. In Barden v. Metropolitan Life Ins. Co., 41 N.C.App. 135, 254 S.E.2d 271 (1979), the issue before the North Carolina court was whether a deceased federal employee's first wife or second wife was entitled to the proceeds from his FEGLIA policy. The federal employee, Mr. Barden, had originally designated his first wife as the beneficiary of the policy. Barden, 254 S.E.2d at 272. Part of their separation agreement required Mr. Barden to continue to designate his first wife as the beneficiary of that policy. Id. Mr. Barden later remarried and subsequently named his second wife as the beneficiary of the policy. Id. The second wife claimed that § 8705(a) mandated that she is entitled to the insurance proceeds, as a matter of law, since she is the named beneficiary on the policy. Id. at 272. The North Carolina court disagreed:
We think that this statute does not entitle the defendant [second wife] to the insurance proceeds. The cited statute establishes a priority scheme for payment and provides that "a designation, change, or cancellation of beneficiary" to be effective as such, must be made "in a signed and witnessed writing received before death in the employing office." This portion of the statute provides the method by which a beneficiary may be *1195 properly designated; it does not establish the right to designate a beneficiary, which right is contained in the insurance policy. More importantly, compliance with the procedure set out in § 8705(a) does not as a matter of law automatically entitle the person so designated to the proceeds.
In the present case, the insured contracted away his right to designate the beneficiary to the insurance proceeds when he entered into the separation agreement with his first wife. Thus, the insured, after 1 August 1970, no longer had the right to designate the beneficiary on the policy, and his "signed and witnessed writing" purporting to designate the defendant as beneficiary of the group policy was a nullity.
Id. at 273 (emphasis added). Citing Roberts v. Roberts for the proposition that a constructive trust on the proceeds could be set up in a situation such as this, the North Carolina court held that Mr. Barden "could, and did, contract away his right to designate the beneficiary, and thus his attempt thereafter to change the beneficiary was of no force and effect." Id. at 274.
¶ 14. Hence, once again, a state court held that being entitled to receive funds from FEGLIA and being ultimately legally entitled to the enjoyment of those funds are two entirely different propositions.
C. IllinoisIn re: Estate of Anderson
¶ 15. In In re Estate of Anderson, 195 Ill.App.3d 644, 142 Ill.Dec. 79, 552 N.E.2d 429 (1990), the Illinois court dealt with a situation factually very similar to the case sub judice. In Anderson, prior to his marriage, the federal employee (Mr. Anderson) entered into an antenuptial agreement with his soon to be new wife, Mrs. Anderson. Id. at 80, 552 N.E.2d at 430. The agreement stated that in the event of Mr. Anderson's death, Mrs. Anderson would receive nothing from his estate, would make no claim against the estate, and would relinquish all right to real or personal property that Mr. Anderson owned or would later acquire. Id. at 81, 552 N.E.2d at 431. After Mr. Anderson's death, the residue of his estate passed to his children from a prior marriage. Id. at 82, 552 N.E.2d at 432. Two of the children (the coexecutors) filed a petition for citation in the circuit court, alleging Mrs. Anderson had wrongfully received the proceeds of Mr. Anderson's life insurance policy from the office of FEGLIA. Id. Mrs. Anderson claimed she knew nothing about the federal life insurance policy prior to receiving the forms to apply for the death benefits. Id. She further claimed that since Mr. Anderson had failed to designate the beneficiary of his life insurance policy through FEGLIA, by operation of law, the proceeds were payable to herself, the widow. Id. at 84, 552 N.E.2d at 434. The Illinois court agreed, but however went on to say: "The fact the insurance proceeds must be paid to respondent [Mrs. Anderson] under section 8705 does not affect the litigation between respondent and the coexecutors regarding entitlement to the proceeds." Id. (emphasis added).
¶ 16. Citing Huff v. Metropolitan Life Ins. Co., 675 F.2d 119 (6th Cir.1982) and Metropolitan Life Ins. Co. v. Manning, 568 F.2d 922 (2d Cir.1977), Mrs. Anderson further claimed that, because the antenuptial agreement was not an effective change of beneficiary as required by the statute, she therefore was entitled to the proceeds. 142 Ill.Dec. 79, 552 N.E.2d at 435. The Illinois court distinguished the two cases cited by Mrs. Anderson by noting that those cases involved suits by individuals against an insurer for payment of the proceeds, which was not the case here. The court then held:

*1196 We find the Federal preemption issue to be without merit. We note, as did the courts in Huff and Manning, that Congress, when enacting the current provisions in section 8705(a), intended to alleviate the administrative difficulties previously suffered by the Civil Service Commission and the insurance companies when paying death benefits and to avoid serious delay in paying these benefits to the survivors of Federal employees. While the statute dictates the order of payment where no beneficiary designation has been made, we conclude it does not preclude a third party from bringing an action against the payee to compel payment of the proceeds to another party properly entitled to the proceeds. Further, a payee under the aforementioned default provisions is not prohibited from entering into a private contract regarding ultimate disposition of any benefits payable under the Federal statute.
Id. (emphasis added). The Illinois court affirmed the decision of the circuit court, which had held that the FEGLIA proceeds belong to the estate under the terms of the prenuptial agreement. Id. at 82, 552 N.E.2d at 432.
¶ 17. The Illinois Anderson court thus joined the Texas and North Carolina courts in distinguishing beneficiary status from ultimate equitable entitlement to funds. It also rejected the preemption argument by noting that Congress intended to clarify beneficiary status for the benefit of the insurers, not to give the beneficiary a federally guaranteed title to the funds.
D. MissouriKidd v. Pritzel
¶ 18. In Kidd v. Pritzel, 821 S.W.2d 566 (Mo.Ct.App.1991), the Missouri Court of Appeals similarly dealt with the issue of whether FEGLIA preempted equitable state law claims. In Kidd, the federal employee, Mr. Kidd, as part of a settlement agreement to his divorce, agreed to maintain his four children of that marriage as the beneficiaries of his life insurance policy written under FEGLIA. Id. at 567. Later, Mr. Kidd executed a designation of beneficiary form with his employer that instead named his two sisters as the beneficiaries of the FEGLIA policy. Id. Later still, Mr. Kidd executed his will that provided, inter alia, that the entire residue of his estate (including the FEGLIA policy) would go into a trust, with his sisters as the trustees, and his children as sole beneficiaries. Id. The trust would remain in effect until his last child was emancipated, then the remainder would be divided equally among the children. Id.
¶ 19. A few years after the last child was emancipated, Mr. Kidd died. Id. In accord with the designation of beneficiary form, the proceeds from the FEGLIA insurance policy were paid to the sisters. Id. Instead of placing the policy proceeds in the trust or dividing the proceeds among the children, as required by the will, the sisters kept the proceeds for their own benefit. Id. The children filed a petition to recover the trust assets and remove the sisters as trustees. Id. The sisters filed a motion for summary judgment, which the court granted, holding that the children's claims were preempted by the FEGLIA statute. Id. at 568.
¶ 20. On appeal, the Missouri court first noted the instances where federal law preempts state law: "Where a federal statute contains specific language of preemption; when federal regulation is so persuasive that Congress left no room to supplant it; or when state law stands as an obstacle to congressional intent." Id. (citing Tectonics, Inc. of Fla. v. Castle Constr. Co., 753 F.2d 957, 961 (11th Cir. 1985)). Next, the Missouri court noted that "Congressional intent is the guidepost *1197 to judicial interpretation of federal statutes." Id. (citing Stribling v. United States, 419 F.2d 1350, 1350 (8th Cir.1969)). Then the court examined the legislative history behind FEGLIA to determine whether Congress intended FEGLIA to preempt state law claims:
FEGLIA was first proposed in 1954 for the purpose of providing low cost group life insurance to federal employees. 1954 U.S.Code Cong. & Admin. News., Volume 2, p. 3052. The Congressional committee which introduced the bill felt it was one of the important new proposals necessary to provide federal employees with a well-rounded personnel program and that the bill carried out the plan outline by President Eisenhower in his message to Congress of May 19, 1954. In that message President Eisenhower noted that there were two predominant features which made the plan especially advantageous to government and its personnel. First, it allowed federal employees to carry out their responsibilities to their families, and secondly, it made available group life insurance which was an essential element in the development of a comprehensive personnel program that applies to Government service the best practices of progressive, private employers.
Id. (internal citations omitted). The Missouri court then examined § 8705, and § 8509(d)(1) of the statute, and 5 C.F.R § 870.902, sections cited by the sisters as proof of Congress's intent that FEGLIA preempt all state law claims.

Section 8705
¶ 21. As was previously stated, Section 8705 of FEGLIA provides the order of precedence for which the life insurance proceeds are to be paid. The Missouri court examined the legislative history and the subsequent amendments to the statute and concluded that the FEGLIA had been amended in 1966 "1) to alleviate the administrative difficulties previously suffered by the Civil Service Commission and the insurance companies when paying death benefits and 2) to avoid serious delay in paying these benefits to survivors of the federal employees." Id. at 569-70. The Missouri court then distinguished the important case of Ridgway v. Ridgway, where the U.S. Supreme Court had held that SGLIA preempts equitable state law actions:
When Congress wrote FEGLIA, unlike SGLIA, it did not include an antiattachment provision such as that found in 38 U.S.C. § 1970(g) nor is such a provision found in the underlying regulations. There are many similar provisions in FEGLIA and SGLIA, but the omission of an anti-attachment clause supports a conclusion that nothing in FEGLIA dictates pre-emption of equitable state law principles. If Congress had desired to totally pre-empt all state law claims it would have included an anti-attachment provision to FEGLIA. Ridgway expressly stated that if Congress chose to avoid the result in that case, it could do so by enacting legislation which did not include an anti-attachment provision. That is precisely what Congress did when it enacted FEGLIA.
The Ridgway court also recognized that the pre-emptive power of SGLIA would not shield cases of fraud or breach of trust. A beneficiary of an insurance policy may have breached a trust to the insured, or an insured may be coerced or tricked into naming a beneficiary as a result of undue influence, duress, or fraud. In this event the Supreme Court acknowledged that the law provides a remedy for those situations. To accept the proposition that Congress intended the named beneficiary on the last filed designation of beneficiary *1198 form to be the person entitled to keep the proceeds of the policy, regardless of the surrounding circumstances, places hundreds of years of well-developed law at the fatal mercy of a statutory provision intended solely to promote administrative convenience and the expeditious payment of claims. The Ridgway court did not exclude the availability of an equitable constructive trust where there is fraud or a breach of trust.
821 S.W.2d at 571 (internal citations omitted & emphasis added). The Missouri court went on to explain that a different standard is applied to preemption in relation to domestic relations law, than in relation to other areas of law: "The United States Supreme Court has consistently recognized that the whole subject of domestic relations between husband and wife, parent and child, belongs to laws of the States, not the laws of the United States." Id. (citing Rose v. Rose, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987)). "There is a higher standard for the establishment of federal pre-emption in the area of domestic relations." Id. (citing Rose, 481 U.S. at 625, 107 S.Ct. 2029). "The state law must do major damage to clear and substantial federal interests in order for the pre-emption doctrine to apply." Id.
¶ 22. The Missouri court concluded that a constructive trust did not interfere with Section 8705, or with the person who holds legal title to the FEGLIA insurance proceeds. Id. at 571-72. Further, although legal title was clearly held by the sisters, if the children in fact held an equitable interest, then a constructive trust protected that interest. Id. at 572.

Section 8709(d)(1)
¶ 23. Next, the Missouri court examined Section 8709(d)(1), which states in relevant part the following:
The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and pre-empt any law of any state or political subdivision thereof or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions....
5 U.S.C. § 8709(d)(1). The sisters argued that this subsection (d) expressly preempts all state law. 821 S.W.2d at 572. The Missouri court disagreed, finding instead: "This section is only concerned with conflicts between state regulation of group life insurance programs and the express contractual provisions contained in FEGLIA policies." Id. at 572-73. "This section is not concerned with state law claims brought once the proceeds of a policy are paid out." Id. at 573 (emphasis added). The Missouri court concluded:
Subsection (d) was added by amendment in 1980 under Pub.L. 96-427. The legislative history concerning that public law states the purpose of the amendment was to increase the amounts of group life insurance available to federal employees, to provide additional life insurance to family members, and to revise the reduction in the life insurance of annuitant. Life Insurance Act of 1980 Pub.L. 96-427, 1980 U.S.Code Cong. & Admin.News (94 Stat. 1831) p. 3868. The amendment was in response to declining participation in the insurance program. Id. at 3869. No explanation was given concerning the congressional intent of adding subsection (d) to § 8709. We read this provision of FEGLIA consistent with our interpretation of § 8705. The purpose of 8709(d)(1) is to alleviate the difficulty of interpreting state laws and regulations concerning *1199 group life insurance. Regardless of whether those state laws place limitations on the amount of coverage, who may be covered, to whom the benefits may be paid or otherwise, the contract of insurance written under FEGLIA will control. However, once the amount of proceeds are determined and paid to the designated beneficiary nothing pre-empts equitable state law claims. Consistent with the intent of the entire amendment, this interpretation avoids any state restrictions placed on group life insurance programs.
As stated above, the language of § 8709(d) makes it clear that the provision is expressly limited to state laws and regulations "which relate to group life insurance," not state laws and regulations relating to conversion, breach of fiduciary relationships or breach of trust. Jurisdictions which have used this provision to support invoking the pre-emption doctrine in FEGLIA cases have ignored the statute's expressed language. These cases have interpreted subsection (d) as pre-empting all state law claims. Defendants have similarly ignored the expressed language in the present case and have misinterpreted the scope of that section. It must be assumed that Congress was merely clarifying its intent to relieve administrative difficulties when a conflict arose between state insurance regulations pertaining to group life insurance programs and the expressed contractual provisions of FEGLIA policies.
821 S.W.2d at 573 (citations omitted & emphasis added).

5 C.F.R. § 870.902(e)
¶ 24. Finally, the Missouri court addressed the sisters' claim that 5 C.F.R. § 870.902(e) conflicts with, and thus preempts, state law claims to the contrary. 5 C.F.R. § 870.902(e) reads in the relevant part: "a change in beneficiary may be made at any time without the knowledge or consent of the previous beneficiary and this right cannot be waived or restricted." The Missouri court noted that some jurisdictions consider this regulation as preventing state-court-ordered divorce decree claims and state-court-approved settlement agreements from overriding the "designation of beneficiary" named person. 821 S.W.2d at 573. The Missouri court disagreed:
Section 870.902 is not a regulation interpreting § 8705, but is simply a compliment [sic] to that provision. Our obligation is not to review the OPM's interpretation of § 8705 but rather to determine if there is a reasonable interpretation of the regulation consistent with carrying out the purpose of the Act. Therefore, we assume that the OPM enacted the regulation in harmony with the purpose of FEGLIA and not as barring equitable state law claims to the proceeds of FEGLIA policies. If Congress had intended to take such a step it would have expressed that intent in clear terms. The only reasonable applicability of § 870.902 to the Act is to further promote the expeditious payment of claims and relief from the administrative burdens imposed on the government agency and the insurance company.... This interpretation is consistent with carrying out the purpose of the Act.
Id. at 574.
¶ 25. The Missouri court concluded that FEGLIA did not preempt state equity claims:
Our result finds no conflict, but only that the expediency requirements of § 8705 are consistent with the search for equity by the state laws and courts. *1200 FEGLIA can and is read in harmony with the function and responsibilities of the domestic and probate courts with a result where equity prevails.
Id. at 575 (emphasis added). The court reversed and remanded the trial court's decision for further proceedings, holding that the sisters might have violated a confidence which might warrant the imposition of a constructive trust. Id.
¶ 26. Thus, in a thorough treatment, Missouri's court of appeals held that, because equitable remedies do not interfere with the actual payment of FEGLIA benefits to the named beneficiary, no question of federal preemption arises.
E. PennsylvaniaEonda v. Affinito
¶ 27. In Eonda v. Affinito, 15 Pa. D. & C.4th 142 (Pa.Com.Pl.1991), aff'd, 427 Pa.Super. 317, 629 A.2d 119 (1993), the Pennsylvania court concluded, as had the majority of other state courts, that FEGLIA does not preempt the imposition of a constructive trust in order to prevent inequity. In Eonda, the federal employee, Mr. Eonda, agreed to designate his son as beneficiary of all of his existing life insurance policies in his marriage settlement agreement made pursuant to his divorce. 15 Pa. D. & C. 4th at 143. In compliance with that agreement, Mr. Eonda designated his son as the beneficiary on his FEGLIA policy. Id. Later, without notifying anyone, Mr. Eonda changed the beneficiary to Jeannene Affinito. Id. After Mr. Eonda died, Ms. Affinito applied for and received the benefits of the FEGLIA policy. Id. The son filed a complaint alleging, inter alia, unjust enrichment and requesting a constructive trust be imposed upon the insurance proceeds. Id. at 144.
¶ 28. The Pennsylvania court first discussed the split among jurisdictions, with federal courts finding preemption, but state courts finding no preemption. Id. at 147-49. The court then held:
The court finds the argument of the plaintiff more persuasive despite the federal rulings. The Commonwealth has a vital interest in seeing that property settlement agreements arising out of a divorce are enforced. The interest of the federal government beyond being able to avoid the various insurance department rules, regulations and laws in the various states is minimal. There is nothing in the law or regulations indicating any restriction on pursuing the funds in the hands of the beneficiary. The court in Ridgway, supra, at 50, 102 S.Ct. 49 said:
We note that there are no federal interests compromised by our decision not to impose a uniform federal rule on the issue of constructive trust and FEGLI insurance proceeds.... FEGLIA was from its inception, meant to place federal civilian employees on a par with private-sector workers, in terms of the benefits of group life insurance. We find no indication that Congress, in setting up such a program, intended government employees to be free of any legal demands that might be made upon their private counterparts.
15 Pa. D. & C. 4th at 149-50. The Pennsylvania court then imposed a constructive trust on the insurance proceeds.
¶ 29. Hence, directly considering the United States Supreme Court precedent in Ridgway, the Pennsylvania court found no conflict between awarding benefits as per the naming of a beneficiary and the subsequent equitable pursuit of those benefits by third parties.
F. New JerseySedarous v. Sedarous
¶ 30. In Sedarous v. Sedarous, 285 N.J.Super. 316, 666 A.2d 1362 (1995), the *1201 New Jersey superior court similarly held that FEGLIA does not preempt the state court from imposing a constructive trust on the insurance proceeds after the death of the insured federal employee. Sedarous, 666 A.2d at 1363. In Sedarous, the federal employee, Mr. Sedarous, had designated his sister as the sole beneficiary of his life insurance policies. Id. Mr. Sedarous commenced divorce proceedings against his wife, but before final judgment was entered, he died. Id. Mrs. Sedarous filed a complaint against the sister seeking a constructive trust on the FEGLIA insurance proceeds. Id. at 1364. The judge initially entered an interim order placing part of the proceeds in a trust account; however, later the judge granted summary judgment in favor of the sister, holding that FEGLIA preempted the imposition of a constructive trust. Id. Mrs. Sedarous appealed, and the appellate court reversed and remanded. Id.
¶ 31. The New Jersey court first noted that it was a case of first impression for its jurisdiction; however, the issue had been previously considered by both federal and state courts, with disparate results. Id. The New Jersey court concluded that the starting point for analyzing this issue was the case of Ridgway v. Ridgway, noting the Supreme Court had held in that case that SGLIA preempted state law from imposing a constructive trust on SGLIA proceeds 666 A.2d at 1364. However, the New Jersey court determined that Ridgway was distinguishable:
The question, of course, is whether Ridgway controls the preemption question in respect of FEGLIA. In resolving this question, we note at the outset that FEGLIA and SGLIA are not cognate enactments. First, FEGLIA is not attended by the exigency that motivated SGLIA, namely the congressional intention to provide military personnel on active duty with insurance unavailable to them in the private market because of the hazardous nature of their work. FEGLIA provides insurance for all federal employees as an additional job benefit in much the same way as any large private employer provides group life insurance to its employees at shared cost. Second, FEGLIA, in § 8705, includes the same provisions respecting payment or proceeds as SGLIA, and while one of FEGLIA's implementing regulations, 5 C.F.R. § 870.902, accords the same absolute employee right of beneficiary designation, FEGLIA, unlike SGLIA, does not have any anti-attachment provision at all. Finally, FEGLIA, but not SGLIA, includes by 1980 amendment, an express preemption of conflicting state law, 5 U.S.C.A § 8709(d)(1)....
666 A.2d at 1365. The New Jersey court then analyzed the preemption issue, in light of the deference given to the paramount state interest in its family law:
The preemption test has been most recently prescribed by the Supreme Court in Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The Court there again explained that state law is not preempted by federal law unless it is the "clear and manifest purpose of Congress" to effect preemption, a purpose that can be demonstrated by the express language of the federal enactment or its structure and purpose, or by a direct conflict between the terms of the federal and state enactments, or by a showing that federal law occupies the field so completely as to justify the inference that state legislation addressing that subject is precluded. Moreover, and to the point here, the inclusion of an express preemption clause does not end the inquiry. Rather, the clause must itself be construed to determine just what it does preempt, and matters beyond the preemptive *1202 reach are then presumed not to be preempted, provided, of course, that the field is not occupied and that there is no direct conflict with federal law.
666 A.2d at 1366 (internal citations omitted). The New Jersey court concluded:
Considering then on one side of the balance the administrative convenience that is at the heart of § 8705 of FEGLIA and of its implementing regulation and, on the other side of the balance, the intensity and pervasiveness of the state interest in the financial protection of the dependents of the divorced obligor spouse, we are confident that FEGLIA's lack of an anti-attachment provision is the critical factor justifying, if not indeed compelling, the conclusion that Ridgway does not govern the FEGLIA preemption issue. Clearly, if Congress had intended the same immunity of proceeds from state court action in FEGLIA as it provided for in SGLIA, it could easily have done so by the simple expedient of including SGLIA's anti-attachment provision in FEGLIA. The fact that it did not militates strongly against both a preemption conclusion and a mandatory extension of Ridgway to FEGLIA problems.
Id. at 1367. The New Jersey court held that FEGLIA does not preclude the state court from imposing a constructive trust on insurance proceeds in the same manner as if the insurance had been privately contracted for. Id.
¶ 32. Thus we note that six other states' courts have concurred that equitable entitlement is not preempted by a beneficiary's being named.
G. MississippiCooper Tire & Rubber Co. v. Striplin
¶ 33. Even though this Court has not previously addressed federal preemption in the context of FEGLIA, this Court has addressed federal preemption in the context of another federal insurance program. In Cooper Tire & Rubber Co. v. Striplin, 652 So.2d 1102, 1103 (Miss.1995), this Court considered whether ERISA preempted state law that required court approval prior to assigning a child's right to insurance proceeds.
¶ 34. In Striplin, the minor child of a Cooper Tire employee was riding his bicycle when he was injured by an uninsured motorist. Id. Pursuant to the terms of an ERISA-based employee pension and insurance program, Cooper Tire paid out more than $12,000 to the minor's medical providers. Id. In connection with the payments, the minor's parents (the Striplins) executed receipt and subrogation agreements, subrogating their rights and interests against any party responsible for their son's injuries. Id. Later, the Striplins' insurance provider agreed to pay $75,000 under the terms of their uninsured motorist policy. Id. Cooper Tire claimed entitlement to be reimbursed for the amount of money it had previously paid out for medical bills. Id. The Striplins rejected Cooper Tire's claim, arguing that the subrogation agreement was invalid under Mississippi law because it did not receive prior court approval. Id.
¶ 35. The chancery court held that ERISA did not preempt state law that required court approval prior to a parent signing away his child's rights to proceeds due him. Id. at 1103. On appeal, this Court concluded: "Congress did not pre-empt areas traditionally regulated by the states." Id. (citing FMC Corp. v. Holliday, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)). "Domestic relations is an area traditionally regulated by the states." Id. (citing Rose v. Rose, 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987)). In unanimously affirming the chancellor's decision, this Court held that the state law requiring *1203 prior court approval is not preempted by ERISA because the state law does not directly or indirectly relate to pension plans, and the state law addressed an area traditionally regulated by the states. Id.
¶ 36. In sum, while the federal courts have held that FEGLIA preempts state equitable actions, such is not the case with a large majority of state courts that have addressed this issue. We find persuasive their holdings that the existence of a named beneficiary to whom the insurer is directed to pay any benefits does not eliminate any equitable claims to the funds paid. We also find persuasive their holdings that this distinction between beneficiary status and ultimate equitable entitlement obviates any issue of federal preemption of state-court action. And, although this Court has not directly considered preemption in regard to FEGLIA, in Cooper Tire v. Striplin, we unanimously held that another federal insurance program, ERISA, does not preempt state domestic relations law, an area traditionally regulated by the states.
¶ 37. By the widow's own admission, the insurance proceeds were intended to go to the children. As such, the widow's retention of those proceeds is clearly unjust enrichment and the most appropriate remedy is for the court to impose a constructive trust in favor of the children upon those proceeds.

CONCLUSION
¶ 38. Therefore we reverse the Court of Appeals decision that awarded the FEGLIA proceeds to the widow, and we direct the chancery court on remand to impose a constructive trust in favor of the children over those proceeds. All other issues addressed by the opinion of the Court of Appeals, and not addressed by this opinion are affirmed.
¶ 39. AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION.
McRAE, P.J., Specially Concurring:
¶ 40. Without explaining why, the majority directs the chancery court to impose a constructive trust in this case. In my view the contract between the Spradlings applies to resolve this case. The Spradlings, prior to marriage, contracted that his children would be the beneficiaries of his life insurance. The contract is valid; and the quagmire created by the majority opinion is a sticky mess. The issue here is very simple: Was Mrs. Spradling entitled to the FEGLIA insurance benefits (1) when she contracted that she would not be, and (2) when she swore that she did not expect to be? The answer is equally simple: No. The majority, however, without any legal analysis of the antenuptial's validity or effect, trudges down the path of FEGLIA preemption law which has divided our sister jurisdictions and the federal judiciary. We really need not traverse this path. Accordingly, I write separately because contract law principles are the better path to judgment in this case.
¶ 41. While FEGLIA provides that, in the absence of a named beneficiary, the proceeds of a FEGLIA policy are to be distributed, upon certain time restrictions, to (1) the widow(er) then, (2) to the children of the decedent, this order of precedence is irrelevant in this case given the Spradlings' antenuptial contract.
¶ 42. As the Court of Appeals reasoned:
[T]he fact that the proceeds were properly paid to the widow under the order of precedence under FEGLIA when no *1204 beneficiary was designated does not resolve the question as to whether the widow is immune from a breach of contract suit in the face of the terms and conditions of the antenuptial agreement which she signed. Stated another way, does the antenuptial agreement arm either the estate or the children of J.W. Spradling with a legal vehicle for redress, despite the fact that the policy amount was lawfully and legally paid to the widow under the order of precedence established under FEGLIA?
McCord v. Spradling, 2000 WL 1819539, at *5 (¶ 22) (Miss.Ct.App.2000).
¶ 43. The answer to this question is resoundingly yes. Indeed, the imposition of a constructive trust is not necessary here, as there was no event justifying the law's operation in this direction. The antenuptial agreement between Mr. and Mrs. Spradling expressed their intention that, as to each, their separate children would be the beneficiaries of their separate assets, rather than each other. On this point, there is no question.
¶ 44. Since, however, Mrs. Spradling's claim for the insurance proceeds violated that agreement, resolution of this case is therefore governed by the law of contract, specifically breach and appropriate remedies.
¶ 45. An antenuptial contract is as enforceable as any other contract. Hensley v. Hensley, 524 So.2d 325, 327 (Miss.1988). Accordingly, the same rules of interpretation apply. Id. The first rule of interpretation is to follow the intent of the parties. Smith v. Smith, 656 So.2d 1143, 1147 (Miss.1995); Newell v. Hinton, 556 So.2d 1037, 1042(Miss.1990); Hensley, 524 So.2d at 327; Roberts v. Roberts, 381 So.2d 1333, 1335 (Miss.1980).
¶ 46. The record in this case reveals that when Mr. and Mrs. Spradling married, each was aware that the other had garnered a life-time of assets. Indeed, the distribution of their separate assets to their separate children from their previous marriages was the driving force of their antenuptial contract. And this contract clearly expressed manifestation of their intent to prevent exactly what has happened here. Mrs. Spradling even swore that she knew her husband wanted his wealth, separate and apart from their marriage, and resulting from his death, to be distributed to his childrenjust as she desired for herself. However, Mrs. Spradling undermined that intent the moment she filed a claim for the insurance proceeds.
¶ 47. Our State Constitution gives legal protection to contracts. Specifically, contractual obligations are not to be impaired by the laws of this state. Miss. Const. art. 3, § 16. What the majority fails to recognize, particularly in terms of the FEGLIA cases it cites, is that this is a case between two citizens of Mississippi who entered into a legally enforceable contract as to the disposition of their assets. And Mrs. Spradling, by contract, waived her right to the insurance proceeds. She breached this contract under the laws of this state, plain and simple.
¶ 48. The antenuptial agreement, the testimony of Mrs. Spradling and her specious claim for the insurance proceeds, are the facts upon which the outcome of this case dependsnone of which require us to engage in the legal adventure that has, naturally, resulted in the fractured disposition of two appellate courts. Mrs. Spradling breached the contract when she applied for the life insurance proceeds. Mr. Spradling's children were the intended beneficiaries of that money and should be provided it as contract law allows.
NOTES
[1] Metro. Life Ins. Co. v. Thompson, 968 F.Supp. 312 (S.D.Miss.1997). In Thompson, a case similar to the case sub judice, the federal district court concluded that federal law pertaining to FEGLIA supercedes any conflicting state law of domestic relations. Id. at 313. The court held that the properly named beneficiary of a FEGLIA policy was entitled to receive and collect the proceeds, notwithstanding a prenuptial agreement purporting to waive that right. Id. at 314. The court further held that the named beneficiary could not be required to hold the proceeds in constructive trust for the benefit of the children. Id. at 314 n. 1.
[2] An exception to this rule was Rollins v. Metropolitan Life Insurance Co., 863 F.2d 1346 (7th Cir.1988). However, Rollins was later expressly overruled by Metropolitan Life Ins. Co. v. Christ, 979 F.2d 575, 578 (7th Cir.1992).