905 So.2d 747 (2004)
Michael Bruce THORNHILL, Appellant,
v.
Jean F. THORNHILL, Appellee.
No. 2003-CA-01515-COA.
Court of Appeals of Mississippi.
November 23, 2004.
*748 Shirlee Marie Fager-Baldwin, Hattiesburg, for appellant.
John D. Smallwood, Tupelo, for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. William Bruce Thornhill entered into a property settlement agreement with his former spouse, Alice Thornhill, and agreed to maintain a life insurance policy for the benefit of the parties' minor child, Michael Bruce Thornhill. William later added his new wife Jean as co-beneficiary of the policy. Upon William's death, the insurance company paid half of the insurance proceeds to Michael and the other half to Jean. Thereafter, Michael filed a petition, asserting his rights to all of the funds. Jean filed a motion to dismiss Michael's action. In response, Michael filed a motion for summary judgment. The *749 chancellor granted Jean's motion to dismiss, and denied Michael's motion for summary judgment. Aggrieved by the chancellor's decision, Michael now appeals and presents the following issue for our review: whether the court erred in granting Jean's motion to dismiss and in denying his motion for summary judgment.
¶ 2. We find that the trial court erred in dismissing Michael's complaint although we find no error in the refusal of the court to grant summary judgment to him.

FACTS
¶ 3. William and Alice were divorced in 1992. Pursuant to a property settlement agreement, William agreed to maintain a life insurance policy for Michael. The property settlement agreement specifically provided that "William Bruce Thornhill shall continue to provide a life insurance policy, insuring his life, in the amount of $100,000.00, with the minor child of the parties to be the named beneficiary thereon...." Shortly thereafter, William married Jean F. Thornhill and added his new wife as co-beneficiary of the existing life insurance policy, thus making Michael and Jean co-beneficiaries of the policy.[1] William died in November 1997, and the insurance company paid one-half of the proceeds to Michael and the other one-half to Jean.
¶ 4. Under the belief that William died intestate, Michael petitioned the chancery court for appointment as administrator of his father's estate, and the court entered an order on February 24, 1999 appointing him administrator. Jean filed an objection to Michael's petition, and the court appointed Jean executrix of her husband's estate on August 9, 1999. A notice to creditors was first published in the newspaper on April 7, 2000. On August 30, 2000, Michael filed an objection to the final accounting and distribution of his father's estate, alleging that he was entitled to all of the insurance funds and that the remaining funds in Jean's possession should be an allowable claim against his father's estate.
¶ 5. Michael then filed a complaint in the Lamar County Circuit Court on December 21, 2000, alleging that he was entitled to the value of the life insurance policy pursuant to the judgment of divorce and property settlement agreement. He asked the court to direct Jean to release unto him the remaining proceeds of his father's life insurance policy. The Lamar County Circuit Court transferred the action to the chancery court on June 7, 2001.[2] On June 14, 2001, Michael filed a voluntary dismissal of his objection to the final accounting and distribution of his father's estate. William's estate was closed by court order on July 5, 2001.[3] Michael filed an amended *750 petition on July 10, 2001, alleging that since Jean received a portion of the proceeds from the life insurance policy, and the proceeds belonged to him, the proceeds received by Jean were held in a constructive and/or a resulting trust for him. He stated that the resulting and/or constructive trust arose due to William's obligations to him and that Jean knew or should have known of that obligation. Jean filed a motion on September 28, 2001, to dismiss Michael's claim. Thereafter, on March 7, 2003, Michael filed a motion for summary judgment on the issue of the life insurance proceeds. An order granting Jean's motion to dismiss and denying Michael's motion for summary judgment was entered on June 10, 2003. Additional facts will be related during our discussion of the issue.

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 6. Michael argues that the chancery court erred in denying his motion for summary judgment and granting Jean's motion to dismiss. He further claims that since his father agreed to maintain a $100,000 life insurance policy for his (Michael's) benefit, his father entered into a binding contractual obligation. Michael maintains that as a result, his father's contractual obligations are binding upon his father's heirs, legatees and legal representative and are, therefore, enforceable against Jean under a theory of constructive trust.
¶ 7. Jean, however, argues that although the provisions of the property settlement agreement were contractual in nature, and, therefore, binding upon Michael's father, they are not binding upon her as a third party. She further argues that a claim that Michael's father failed to meet his contractual obligation should have been brought against his estate. She also argues that, although Michael filed an objection in the estate and demanded the disputed funds, his claim was time barred since the objection was filed more than ninety days after the first notice to creditors.

Standard of Review
¶ 8. The law is well settled with respect to the grant or denial of summary judgments. A summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "All that is required of an opposing party to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule." Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 81 (Miss.1991) (citing Galloway v. Travelers Ins. Co., 515 So.2d 678, 682 (Miss.1987)). "In determining whether the entry of summary judgment [is] appropriate, [the appellate court] reviews the judgment de novo, making its own determination on the motion, separate and apart from that of the trial court." Id. "The evidentiary matters are viewed in the light most favorable to the nonmoving party." Id. "If after this examination, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, then summary judgment is affirmed, but if after examining the evidentiary matters there is a genuine issue of material fact, the grant of summary judgment is reversed." Id.
¶ 9. Similarly, "[an appellate court's] standard of review for a motion to dismiss is well established." Black v. City of Tupelo, 853 So.2d 1221, 1223(¶ 4) (Miss. 2003). "A motion to dismiss for failure to state a claim under Mississippi Rules of *751 Civil Procedure 12(b)(6) raises an issue of law." Id. "[An appellate court] reviews questions of law de novo." Id. "When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt the plaintiff will not be able to prove any set of facts in support of his claim." City of Tupelo, 853 So.2d at 1224 (citing Poindexter v. Southern United Fire Ins. Co., 838 So.2d 964, 966 (Miss.2003)).
¶ 10. Here, William and Alice entered into an agreement which expressly provided for William's maintenance of a life insurance policy in the amount of $100,000 for Michael. "Property settlement agreements are contractual obligations." In re Estate of Hodges, 807 So.2d 438, 445(¶ 26) (Miss.2002) (citing Prine v. Prine, 723 So.2d 1236, 1238 (Miss. App.1998)). "A true and genuine property settlement agreement is [no] different from any other contract, and the mere fact that it is between a divorcing husband and wife and incorporated in a divorce decree does not change its character." In re Estate of Hodges, 807 So.2d at 445 (citing East v. East, 493 So.2d 927, 933 (Miss. 1986)). Although William later changed Michael's status as sole beneficiary to add Jean as a co-beneficiary, his original obligation to maintain a $100,000 policy with Michael as the beneficiary remained. William, therefore, violated the terms and conditions of his judgment of divorce. Since the property settlement agreement was a binding contract, it was enforceable against William's estate in the probate proceedings as a breach of contract action.
¶ 11. Having determined that the property settlement agreement was an enforceable contract against William's estate, we must now determine if Michael's claim against the estate was submitted in a timely manner. Mississippi Code Ann. section 91-7-151 (Rev.2004) provides in pertinent part:
All claims against the estate of deceased persons, whether due or not, shall be registered, probated and allowed in the court in which the letters testamentary or of administration were granted within ninety (90) days after the first publication of notice to creditors. . . .
Here, the record indicates that a notice to creditors was first published on April 4, 2000. Thereafter, on August 30, 2000, Michael filed a petition alleging entitlement to the remaining insurance funds. Clearly, more than ninety days after the first notice to creditors had elapsed when Michael filed his petition. However, in our judgment, the inquiry does not end here. We must look at the fact that when William died, Michael was a minor, and according to the terms of William's will, Jean was appointed testamentary guardian of Michael's person and estate.
¶ 12. The record does not inform us whether Jean ever went into court seeking to be appointed testamentary guardian of Michael's estate. Since neither party asserts that this happened, we assume it did not. Nevertheless, Jean, as the executrix of William's will, had an obligation to carry out the terms and conditions of that will, one of which was to serve as Michael's guardian or make known that she was unwilling or unable to do so. Further, in her capacity as guardian, she would have an obligation to initiate any and all claims which her ward, Michael, possessed against his father's estate or against anyone else.
¶ 13. Additionally, it seems to us that since Jean was designated Michel's testamentary guardian, she was in a fiduciary relationship with Michael. In that capacity, she not only had an obligation to initiate any and all claims which Michael may have had, but she had an obligation to *752 initiate them timely. William died on November 24, 1997. At that time, Michael was nineteen years of age. Notwithstanding the provision in William's will naming Jean testamentary guardian of Michael's person and estate, apparently Jean did nothing until 1999 when Michael, thinking his father died intestate, applied for letters of administration. At that time, Jean objected to Michael's appointment, produced William's will, and asked to be appointed executrix in accordance with the provisions of the will. The court granted her request and, in early 1999, appointed her executrix of William's estate. At the time of the appointment, Michael was still a minor, only twenty years of age.
¶ 14. Therefore, the question is whether on these facts, Michael's amended complaint fails to state a claim upon which any relief can be granted. The trial court, in granting Jean's Rule 12(b) motion determined that Michael's claim was time barred because he failed to file a claim against William's estate within ninety days of the first publication of the notice to creditors. While it is true that Michael did not file his claim against the estate within ninety days of the first publication of the notice to creditors, it should be noted that, at that time, Michael was a minor. Any claim should have been filed on his behalf by his guardian unless he had been legally emancipated.[4] Assuming that Michael had not been emancipated, it was incumbent upon Jean to act in the absence of the appointment of another person as guardian. If there was a dereliction of duty by Jean, she should be estopped from asserting the statute of limitations as a defense to Michael's claim against the estate. The matter is further complicated by the fact that the estate has been closed.
¶ 15. Nevertheless, and notwithstanding our determination that perhaps Jean should be estopped from asserting the statute of limitations as a defense to Michael's claim against the estate, the question remains whether Michael could prove any set of evidence that would entitle him to relief against Jean in either her individual or official capacity as the representative of William's estate for her receipt and retention of half of the proceeds of William's life insurance policy. There does not seem to be an easy answer.
¶ 16. In McCord v. Spradling, 830 So.2d 1188 (Miss.2002), the Mississippi Supreme Court determined that a constructive trust should be impressed against the proceeds of an insurance policy which the elderly widow of a decedent received despite her agreement in an antenuptial agreement with the decedent that each of their respective estates would descend to their children from previous marriages. There, the decedent had left his wife from his previous marriage as the designated beneficiary of the insurance policy. However, she predeceased the decedent, and the decedent never changed the beneficiary before his death. Thus, the beneficiary was determined under the order of precedence of beneficiaries as specified in Federal Employees Group Life Insurance Act (FEGLIA). That order of precedence resulted in the widow being designated as the beneficiary.
¶ 17. This Court determined that the proceeds were properly paid to the widow pursuant to the order of precedence under the FEGLIA and that the decedent's children's cause of action lay in a breach of contract claim for the widow's violation of the antenuptial agreement by submitting the beneficiary claim form. The McCord court rejected the rationale and decision of *753 this Court and directed the imposition of a constructive trust in favor of the decedent's children upon the insurance proceeds. McCord, 830 So.2d at 1203(¶ 38). In directing the imposition of a constructive trust, the court stated: "By the widow's own admission, the insurance proceeds were intended to go to the children. As such, the widow's retention of those proceeds is clearly unjust enrichment and the most appropriate remedy is for the court to impose a constructive trust in favor of the children upon those proceeds." McCord, 830 So.2d at 1203(¶ 37).
¶ 18. While the McCord court imposed a constructive trust, it did not apply the criteria for the imposition of the trust to the facts of the case. We note that "a constructive trust is a means recognized in our law where one who unfairly holds a property interest may be compelled to convey that interest to another to whom it justly belongs." In re Estate of Horrigan, 757 So.2d 165, 170(¶ 25) (Miss. 1999) (citing Allgood v. Allgood, 473 So.2d 416 (Miss.1985)). "`[I]t is the relationship plus the abuse of confidence imposed that authorizes a court of equity to construct a trust for the benefit of the party whose confidence has been abused.'" Davidson v. Davidson, 667 So.2d 616, 620 (Miss. 1995) (quoting Lipe v. Souther, 224 Miss. 473, 80 So.2d 471, 475 (1955)). In McCord, the court never identified or discussed the confidence that had been abused, and it rejected the notion that the widow's reneging on the terms and conditions of the antenuptial agreement provided a cause of action to the decedent's children. Nevertheless, the court imposed a constructive trust on the insurance proceeds.
¶ 19. Here, it is undisputed that under the terms of the judgment of divorce, all of the proceeds of William's life insurance policy were supposed to go to Michael. There is no dispute as to this issue. What is unknown is whether Jean had a hand in changing the beneficiary designation to make her a coequal beneficiary. Further, it is not revealed in this record when Jean became aware that William was obligated by the judgment of divorce to leave the entire proceeds of his life insurance policy to Michael. Of course, it can be reasonably argued that Jean at least had constructive knowledge of this fact since judgments of divorce are public documents.
¶ 20. Nevertheless, based on the facts presented here, and in light of the holding in McCord, it seems to us that Jean's retention of the insurance proceeds might constitute unjust enrichment. Therefore, we find that the trial court erred in granting Jean's Rule 12(b) motion. Our finding on this issue brings us to the last issue, and that is whether the trial court also erred in not granting Michael's motion for summary judgment. Again, based on McCord, we cannot say with confidence that Jean's prior knowledge of the terms and conditions of the judgment of divorce or her role, if any, in the changing of the beneficiary designation are not material facts which are relevant to a determination as to whether she should be adjudged to have been unjustly enriched. Since Jean's motion to dismiss was granted before these matters could be developed through discovery, we find no error on the part of the trial court in denying Michael's motion for summary judgment.
¶ 21. We might add that it is not clear to us from the McCord decision whether the court's finding that the widow was unjustly enriched was predicated upon her signing the antenuptial agreement or upon her knowledge that the decedent wanted the proceeds of his life insurance policy to go to his children. This fact notwithstanding, however, we reverse the decision of the trial court and remand this case for a full and complete development of the facts *754 and trial if warranted after appropriate discovery.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS AFFIRMED AS TO THE DENIAL OF SUMMARY JUDGMENT ON BEHALF OF THE APPELLANT AND REVERSED AND REMANDED AS TO THE GRANT OF APPELLEE'S MOTION TO DISMISS. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES and LEE, P.JJ., MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. GRIFFIS, J., CONCUR IN RESULT ONLY.
NOTES
[1] William also executed a will in which he appointed Jean guardian of Michael's estate. The will stated in pertinent part: "In the event a court of competent jurisdiction determines that some other individual should be the guardian of Michael Bruce Thornhill, I direct that Jean Ellen Ford Thornhill nonetheless be the guardian of his estate insofar as the estate contains any property, real, personal, or mixed, that goes to Michael Bruce Thornhill as a beneficiary, of any life insurance policy insuring my life, or as a beneficiary of any banking account on which I was a co-tenant during my lifetime or as a grantee, devisee, or heir of any other property in which I held an interest during my lifetime."
[2] Although the action was transferred from the circuit court on June 7, it was not filed in the chancery court until June 21, 2001.
[3] Michael's brief, and the chancellor's order granting Jean's motion to dismiss and denying Michael's motion for summary judgment, both stated that William's estate was closed on July 5, 2001. However, after a thorough search of the record, we could not find an order closing William's estate on that date.
[4] The record does not shed any light on whether emancipation had occurred or whether some other person had been appointed guardian.